[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 5, 2006
THOMAS K. KAHN
CLERK

No. 05-15754
Non-Argument Calendar

_____

D. C. Docket No. 04-02215-CV-CC-1

LASHAUN P. HOOKS,

Plaintiff-Appellant,

versus

BANK OF AMERICA,

Defendant,

BANK OF AMERICA, NATIONAL
ASSOCIATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 5, 2006)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

LaShaun P. Hooks, a black female proceeding pro se, appeals from the district court's order granting summary judgment in favor of Bank of America ("BOA"), where she previously was employed as a part-time teller. In her complaint, she alleged claims for race discrimination, hostile work environment, and retaliation, in violation of Title VII, 42 U.S.C. §§ 2000e-2, 2000e-3, and a defamation claim under Georgia law. On appeal, Hooks argues the district court erred by finding that she failed to establish a prima facie case on her Title VII claims.[1] After careful review, we affirm.

We review "a grant of summary judgment de novo, using the same legal standard as the district court." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1184 (11th Cir. 1997). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). There is a genuine issue of material fact only if the nonmoving party has produced evidence that a reasonable

---

[1] Hooks also challenges the dismissal of her defamation claim under state law. A defamation claim under Georgia law has a one-year statute of limitations. See Ga. Code. Ann. § 9-3-33; McCandliss v. Cox Enters., Inc., 593 S.E.2d 856, 859 (Ga. Ct. App. 2004). The incidents alleged in Hooks's complaint took place sometime in 2002, but she did not file her complaint until June 2004, which was well after the expiration of the limitations period. Thus, her defamation claim was untimely and was properly dismissed. We reject Hooks's additional claims under state law, including perjury, fraud, sabotage, espionage, and conspiracy, all of which she asserts for the first time on appeal, having never raised them in the district court as bases for recovery.

2

fact-finder could return a verdict in its favor. Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. Celotex, 477 U.S. at 323.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Because Hooks relies on circumstantial evidence to establish her Title VII claims, we test the sufficiency of those claims by applying the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Under the McDonnell Douglas framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. The plaintiff's successful assertion of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing U.S. Postal

3

Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). Second, if the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. See Joe's Stone Crab, 296 F.3d at 1272. We proceed to the third step of the analysis once the employer meets its burden of production by proffering a legitimate, non-discriminatory reason, thereby rebutting the presumption of discrimination, and "[our] inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. at 1272-73 (citing Burdine, 450 U.S. at 255-56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id. at 1273.

At the first step of the McDonnell Douglas test, to establish a prima facie case of racial discrimination and retaliation, the plaintiff must show, among other things, that she suffered an adverse employment action. Id. at 1286 (11th Cir. 2000) (discrimination); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998) (retaliation). We have held that "not all conduct by an employer negatively affecting an employee constitutes adverse employment

4

action." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001) (discrimination); Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (retaliation). Indeed, "[a]lthough [Title VII] does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." Davis 245 F.3d at 1239. Thus, we have required an employee to show "a serious and material change in the terms, conditions, or privileges of employment." Id.; see also Gupta, 212 F.3d at 587. "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis 245 F.3d at 1239.

Here, Hooks failed to establish that she suffered an adverse employment action and thus did not satisfy her initial burden under McDonnell Douglas. Viewing all of the facts in the light most favorable to Hooks, none of the incidents she described, either individually or in combination, constituted an adverse employment action. The incidents included the following: three customer complaints, one oral reprimand, one written reprimand, the withholding of a building key, and a restriction on cashing non-account-holder checks. None of these incidents resulted in any material change to the terms or conditions of

5

Hooks's employment. Indeed, Hooks admitted that her pay, hours, and job duties remained the same after the incidents. Cf. id. at 1240-41 (where plaintiff's disparate-treatment claim was predicated on two kinds of employer acts -- negative job performance memoranda placed in his file and changes in work assignments -- holding that these acts were not "adverse employment actions" that resulted in tangible consequences in the form of loss of pay or benefits). As we observed in Davis, "criticisms of an employee's job performance -- written or oral -- that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Id. at 1241. None of the alleged incidents in Hooks complaint constitute an adverse employment action, within the meaning of Davis, and therefore the district court did not err by entering summary judgment on Hooks's discrimination and retaliation claims.

As for Davis's hostile work environment claim, in order to establish a prima facie claim, she had to establish: "(1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of

6

vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). The fourth element -- that the harassment altered the terms and conditions of employment -- contains both a subjective and an objective component. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). Thus, to satisfy this element, the employee must show that she subjectively perceived the harassment as severe and pervasive enough to change the terms or conditions of employment and present facts sufficient for the district court to find that this perception was objectively reasonable. Id. In making this objective determination, the following factors should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

We readily conclude that Hooks failed to show that the alleged harassment was sufficiently severe to alter the terms and conditions of her employment. The alleged incidents here are the same as those underlying her discrimination claim. These incidents were not frequent, severe, or physically threatening, and Hooks admitted that none of these incidents interfered with her job. Thus, under Mendoza, it is clear that Hooks failed to establish the objective component of the

7

fourth element of her prima facie case. <u>See</u> 195 F.3d at 1246. Accordingly, the BOA was entitled to summary judgment.

**AFFIRMED.**