A91A1964. STALVEY v. ATLANTA BUSINESS CHRONICLE, INC.
(414 SE2d 898)

McMURRAY, Presiding Judge.

Thomas Stalvey (plaintiff) brought a defamation action against The Atlanta Business Chronicle, Inc. (defendant), alleging defendant published a statement in defendant's magazine which tended to "injure [his] reputation and to expose [him] to public hatred, contempt, and ridicule. . . ." More specifically, plaintiff alleged "the entire libelous article . . ." inferred that he was either an accomplice to sexual assaults or that he obstructed police investigations of the assaults. Plaintiff also alleged that as the proximate result of defendant publishing the defamatory article his good reputation in the community was lost, his professional standing was injured; that he has suffered mental anguish, humiliation and he sustained lost wages. Defendant

denied the material allegations of the complaint and filed a motion for summary judgment.

Defendant published an article entitled, "Kathryn Smith's story reveals the human side of apartment security," in the April 1989, edition of the magazine, *Counterpart.* The article describes two sexual assaults of female residents of an apartment complex ("Park Crossing") formerly managed by plaintiff. The article gives details of how a Park Crossing maintenance man (Dennis Patrick Connolly) committed the crimes and how he gained entrance to the victims' apartments with a pass key. Pertinent provisions of the article state as follows:

"Within a few days of the [first sexual assault], Connolly resigned from Park Crossing to head off his own firing; he had a personality clash with the property supervisor, Tom Stalvey. He was not considered a suspect [after the first sexual assault], although he was one of only three people with master keys. The other two were a Gwinnett police officer who lived at the complex and doubled as its 'courtesy officer,' and Stalvey. *It was Stalvey who told Gwinnett police it would not be necessary to even question Connolly.*

"But when he left, Connolly took a print of the master key at Park Crossing and moved into another apartment complex across Dickens Road. He had used the key to enter the apartment of the [first sexual assault] victim and [he later] used it to attack the woman he had seen about the complex and about whom he was 'curious,' the careful Kathryn Smith. . . .

"A civil suit filed by Smith in the aftermath of Connolly's crime spree has forced Balcor Property Management Co. (BPM), which manages Park Crossing, to explain the policies which permitted two unforced entry attacks there within a few months, by an employee with a master key. . . .

"Depositions from the Smith case show that after the first and second attacks on single female residents of Park Crossing in 1986, Balcor's managers took no action to notify other residents of any danger.

*"Though the occupancy rate was relatively low, about 55 percent, more than half of the residents were single, and women outnumbered men, according to testimony from Victoria Hughes, Park Crossing's assistant manager.*

"But Hughes testified she told the staff at Park Crossing 'not to go putting out a news flier and tell it' after the first attack because 'that's not the kind of knowledge you want out.'

"Policy was to answer direct questions with the truth, but Hughes testified that crime rate 'is not generally a question a prospective resident asks a leasing consultant.'

*"According to Hughes' testimony, Stalvey told her 'not to make it a common topic of company conversation.'*

"Asked why, she responded, 'Possible fear of having the property dump . . . that's when everybody vacates and leaves and moves without notice.' " (Emphasis supplied.)

The trial court granted defendant's motion for summary judgment. This appeal followed. *Held*:

1. "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending, to injure the reputation of the person and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel." OCGA § 51-5-2 (a). In the case sub judice, plaintiff denies the allegation that he "told Gwinnett police it would not be necessary to even question Connolly" and argues that this false statement infers that he was either an accomplice to the sexual assaults or that he obstructed police investigations of the assaults. Plaintiff further contends the false statement that he "told Gwinnett police it would not be necessary to even question Connolly" and the false statements that Park Crossing had a "relatively low, about 55 percent," occupancy rate and that plaintiff "told [an employee] 'not to make it (the attack) a common topic of company conversation,' " impugned his reputation as a property manager, leaving genuine issues of material fact as to defendant's liability for defamation.

" 'As a general rule, the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. (Cit.) However, if the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge.' *Thomason v. Times-Journal*, 190 Ga. App. 601 (1) (379 SE2d 551). '(A)s a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. (Cit.) In doing so, the courts "will not hunt for a strained construction in order to hold the words used as being defamatory." (Cit.) In considering whether a writing is defamatory as a matter of law, any relevant extrinsic circumstances will be considered, because "(a) statement may . . . carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium." (Cit.) Moreover, "we will not look at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader." ' Id. at 602 (1)." *Southern Business Machines of Savannah v. Norwest Fin. Leasing*, 194 Ga. App. 253, 259 (4) (390 SE2d 402).

In the case sub judice, we find nothing in the above article which infers that plaintiff was an accomplice to the sexual assaults at Park Crossing. However, we cannot say as a matter of law that the "average reader" would not take the above emphasized language, in context of the *entire* article, as an inference that plaintiff obstructed po-

lice investigators or that plaintiff acted illegally or unethically in order to protect Park Crossing from being "dumped" or deserted by tenants.

"Statements which tend to injure one in his or her trade, occupation, or business have been held to be libelous per se, and one need not prove special damages in such instances. *Walker v. Sheehan*, 80 Ga. App. 606, 611 (56 SE2d 628) (1949); *Dickey v. Brannon*, 118 Ga. App. 33, 35 (162 SE2d 827) (1968)." *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 852 (3) (278 SE2d 689). In the case sub judice, the statements, "It was Stalvey who told Gwinnett police it would not be necessary to even question Connolly" and "the occupancy rate [at Park Crossing] was relatively low, about 55 percent," are susceptible to being proved false. Further, when these statements are read in the context of the *entire* article in question, they may be taken as an attack on plaintiff's reputation as a property (apartment) manager. Consequently, the trial court erred in granting defendant's motion for summary judgment. Genuine issues of material fact remain as to defendant's liability for defamation.

2. Defendant contends publication of the above emphasized language is not libelous because the statements are substantially true.

"While the truth of the charge made may always be proved in justification, Code Ann. § 105-708 [now OCGA § 51-5-6], nevertheless, truthfulness is a question of fact for the jury. *Lester v. Trust Co. of Ga.*, 144 Ga. App. 526, 528 (241 SE2d 633) (1978)." *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 852 (3), supra. In the case sub judice, defendant offers no admissible evidence showing the truth of the allegation that plaintiff "told Gwinnett police it would not be necessary to even question Connolly." On the contrary, defendant admits that neither the editor of its magazine nor the author of the article in question interviewed plaintiff before publication of the alleged defamatory statement. These circumstances not only draw the truthfulness of the above statement into question, they raise genuine issues of material fact as to defendant's reckless disregard for the truth of any portrayal of plaintiff as a property manager who deliberately thwarted police investigators and misled tenants in order to protect the occupancy rate of the apartment complex he managed. See *Barber v. Perdue*, 194 Ga. App. 287, 289 (390 SE2d 234), where it was held that genuine issues of material fact remained as to "actual malice" where the defendant disregarded opportunities for having or obtaining, from objective sources, a knowledge of the true facts prior to publication.

3. Defendant contends the alleged defamatory statements are privileged because they are fair and honest reports of court proceedings. See OCGA § 51-5-7 (5). This contention is not supported by the record.

Defendant carries the burden of proving that any false statement from the above article was a fair and honest report of a court proceeding. *WSAV-TV, Inc. v. Baxter*, 119 Ga. App. 185 (2) (166 SE2d 416). In the case sub judice, defendant offers no official court record proving the truth of the allegation, "It was Stalvey who told Gwinnett police it would not be necessary to even question Connolly."

4. It is unnecessary to address plaintiff's final enumeration.

*Judgment reversed. Sognier, C. J., and Andrews, J., concur.*

DECIDED JANUARY 9, 1992 —
RECONSIDERATION DENIED JANUARY 29, 1992 — 

*Wilson, Strickland & Benson, Warner R. Wilson, Jr., Mary M. Brockington, Anne W. Lewis*, for appellant.

*Jones, Day, Reavis & Pogue, David J. Bailey, Leslie A. Dent*, for appellee.