A04A0361. McCANDLISS v. COX ENTERPRISES, INC.
(593 SE2d 856)

BLACKBURN, Presiding Judge.

In this pro se action regarding the publication of allegedly libelous material on an Internet web site, Scott McCandliss appeals the trial court's dismissal of his action against Cox Enterprises, Inc. d/b/a the Atlanta Journal-Constitution ("AJC"), contending in four enumerations of error that the trial court erred by holding that: (1) his claims were subject to the single publication rule; and (2) all of his claims against the AJC were barred by the one-year statute of limitation applicable to injuries to the reputation caused by published works.[1] For the following reasons, we affirm in part and reverse in part.

The record shows that McCandliss founded Hipsters, a social club whose main function was "to provide social gatherings that included 'size-positive' spectacles for persons of size and those who support them . . . in the form of an atmosphere conducive to interaction and comradery, usually including a bar, music, and dancing." At the first such Hipsters spectacle, a lingerie show with plus-sized models was held. Pictures of one of the models, along with an article about Hipsters written by McCandliss under a pseudonym, was later published without the model's knowledge or permission in "Plumpers and Big Women," an adult magazine featuring plus-sized women both clothed and nude.

The model thereafter sued both McCandliss and the magazine for the unauthorized publication of her pictures, and the AJC covered the story. In an article published on September 7, 2000, the AJC wrote: "The Hipster party in metro Atlanta was noted on the cover [of 'Plumpers and Big Women']: '5,000 Pounds of Sex-Starved Fatties.'" A similar statement was made in a follow-up article published on November 7, 2000. Shortly after each article was published, it was placed in the articles archive located on the AJC's Internet web site.

---

[1] OCGA § 9-3-33.

Almost two years later, on November 7, 2002, McCandliss filed suit against the AJC, arguing that the AJC improperly attributed the caption from the cover of the magazine to Hipsters. In his original complaint, McCandliss contended that the AJC libeled him, placed him in a false light in the public eye, and negligently published the statement about Hipsters without verifying the underlying facts. In each case, McCandliss argued that the AJC's actions had damaged his reputation. McCandliss subsequently amended his complaint to include a claim for tortious interference with business relations.

On December 16, 2002, the AJC filed a motion to dismiss McCandliss's suit, arguing that it was barred by the one-year statute of limitation applicable to claims of defamation. The trial court agreed and dismissed McCandliss's suit. McCandliss now appeals this dismissal.

1. McCandliss contends that the trial court erred by applying the single publication rule to the AJC's Internet postings. We disagree.

Under the English Common Law, every sale or delivery of each single copy of a newspaper was a distinct publication of the libel contained therein, and a separate basis for a cause of action. In Georgia, that rule was statutorily changed, and the "single publication rule" governs actions for libel. *Rives v. Atlanta Newspapers, Inc.*[2] Under the single publication rule, "one publication is only one libel, regardless of the times it was exposed to the view of different people, but each new printing of the paper and its exposure to public view constitutes a libel actionable at law. . . ." [Id. at] 487.

*Cox Enterprises v. Gilreath.*[3]

The purpose of the single publication rule is to protect newspaper defendants and the courts from a multiplicity of suits and an almost endless tolling of the statute of limitations. Its goals can be accomplished by requiring a plaintiff to collect all of his damages in one action, and establish that the statute of limitations is to run from the date of initial publication. The rule is a device by which a widely circulated

---

[2] *Rives v. Atlanta Newspapers*, 220 Ga. 485 (139 SE2d 395) (1964).
[3] *Cox Enterprises v. Gilreath*, 142 Ga. App. 297, 298 (235 SE2d 633) (1977).

libel is litigated in one trial, a convenient fiction to simplify litigation and prevent a multiplicity of suits.

*Carroll City/County Hosp. Auth. v. Cox Enterprises.*[4]

Nonetheless, McCandliss argues that the single publication rule should not be applied to copies of the articles about Hipsters which were placed in the archives section of the AJC's Internet web site. Like the claimant in *Firth v. State of New York*,[5] McCandliss argues that "because a [w]eb site may be altered at any time by its publisher or owner and because publications on the Internet are available only to those who seek them, each 'hit' or viewing of the [news article] should be considered a new publication that retriggers the statute of limitations." This argument, however, lacks merit.

> The policies impelling the original adoption of the single publication rule support its application to the posting of the [AJC's news articles] regarding [Hipsters] on the [AJC's w]eb site. Communications accessible over a public [w]eb site resemble those contained in traditional mass media, only on a far grander scale. Those policies are even more cogent when considered in connection with the exponential growth of the instantaneous, worldwide ability to communicate through the Internet. As aptly stated in *Reno v. American Civil Liberties Union*,[6] "[f]rom the publisher's point of view, (the World Wide Web) constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers." Communications posted on [w]eb sites may be viewed by thousands, if not millions, over an expansive geographic area for an indefinite period of time. Thus, a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet,

---

[4] *Carroll City/County Hosp. Auth. v. Cox Enterprises*, 243 Ga. 760 (256 SE2d 443) (1979).

[5] *Firth v. State of New York*, 98 NY2d 365, 369 (775 NE2d 463) (2002).

[6] *Reno v. American Civil Liberties Union*, 521 U. S. 844, 853 (117 SC 2329, 138 LE2d 874) (1997).

which is, of course, its greatest beneficial promise. Thus, we hold that the single publication rule applies in this case.

(Citations omitted.) Id. at 370. See also *Van Buskirk v. New York Times Co.*[7]

2. McCandliss also contends that the trial court erred by dismissing all of his claims pursuant to the one-year statute of limitation contained in OCGA § 9-3-33. This statute provides, in relevant part: "Actions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues."

Thus, applying the single publication rule and the one-year statute of limitation to the matter at hand, McCandliss could have timely filed suit against the AJC for any injury to his reputation on November 6, 2001, at the latest. Thus, those claims brought by him for injury to his reputation are, in fact, barred.

We must next determine which of McCandliss's claims involve injury to the reputation. As a general rule, the exclusive "legal remedy where one is allegedly injured by words published to a third person is an action for defamation." (Punctuation omitted.) *Tucker v. News Publishing Co.*[8] Therefore, McCandliss's claims for libel, false light, and negligent publication, all of which rest on his allegations that he received personal injury from the AJC's published words, are all barred by the one-year statute of limitation, and the trial court properly dismissed these claims.

A different rule, however, applies to McCandliss's claim for tortious interference with business relations. As we have previously held with regard to tortious interference with contract claims, the one-year statute of limitation for defamation actions is inapplicable, even if the interference allegedly was accomplished through defamation. *Lee v. Gore.*[9] That same rule applies here. As such, the trial court improperly dismissed McCandliss's claim for tortious interference with business relations pursuant to the one-year statute of limitation.

We do not, however, reach the merits of McCandliss's tortious interference claim, which may still be challenged on a motion for summary judgment.

*Judgment affirmed in part and reversed in part. Barnes and Mikell, JJ., concur.*

---

[7] *Van Buskirk v. New York Times Co.*, 325 F3d 87 (2nd Cir. 2003).

[8] *Tucker v. News Publishing Co.*, 197 Ga. App. 85, 87 (2) (397 SE2d 499) (1990).

[9] *Lee v. Gore*, 221 Ga. App. 632, 634-635 (472 SE2d 164) (1996).

DECIDED JANUARY 8, 2004 —
RECONSIDERATION DENIED FEBRUARY 2, 2004 

Scott McCandliss, *pro se.*
*Dow, Lohnes & Albertson, Peter C. Canfield, Thomas M. Clyde, Christopher Reilly,* for appellee.