**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 10, 2014**

# In the Court of Appeals of Georgia

A14A0971. BOSTON et al. v. ATHEARN et al.                    JE-049

ELLINGTON, Presiding Judge.

Alexandria Boston ("Alex"), a minor, through her parents Amy and Christopher Boston, brought this action in the Superior Court of Cobb County against Dustin Athearn, a minor, his parents, Sandra and Michael Athearn, and other defendants. The Bostons allege that Dustin defamed Alex when, posing as her, he created a Facebook account and profile and posted statements and photographs in that forum that constituted libel under Georgia law.[1] In addition, they allege that Dustin's actions constituted intentional infliction of emotional distress. Sandra and Michael Athearn ("the Athearns") moved for summary judgment. After a hearing, the trial

---

[1] See OCGA § 51-5-1 (a) ("A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing [the person] to public hatred, contempt, or ridicule.").

court granted The Athearns' motion, and the Bostons appeal. The Bostons contend that questions of material fact remain regarding whether the Athearns breached a duty to supervise their child's use of a computer and an Internet account. In addition, they contend that questions of material fact remain regarding whether the Athearns, as landowners, breached a duty to remove defamatory content existing on their property. For the reasons explained below, we affirm in part and reverse in part.

> Under OCGA § 9-11-56 (c)
>
> [s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014). See also *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013) (accord).

Viewed in the light most favorable to the Bostons as the nonmovants, the record shows the following undisputed facts. In early May 2011, Dustin, who was 13 years old, and his friend, Melissa Snodgrass, agreed to have some fun at a classmate's

2

expense by creating a fake Facebook page for that person. Dustin selected Alex, a fellow seventh-grader, as their target, and Melissa agreed. Melissa, posing as Alex, created a Yahoo e-mail account to use to create a new Facebook account, and gave that information to Dustin. On May 4, using a computer supplied by his parents for his use and the family Internet account, Dustin posed as Alex to create a new Facebook account, using the Yahoo e-mail address and the password Melissa supplied. For the profile photo, Dustin used a photo that he had taken of Alex at school, after altering it with a "Fat Face" application.

After Dustin created the account, both Dustin and Melissa added information to the unauthorized profile, which indicated, inter alia, racist viewpoints and a homosexual orientation. Dustin and Melissa also caused the persona to issue invitations to become Facebook "Friends" to many of Alex's classmates, teachers, and extended family members. Within a day or two, the account was connected as Facebook "Friends" to over 70 other Facebook users. Dustin and Melissa continued to add information to the persona's profile and caused the account to post status updates and comments on other users' pages. Some of these postings were graphically sexual, racist or otherwise offensive and some falsely stated that Alex was on a medication regimen for mental health disorders and that she took illegal drugs.

3

Alex soon suspected that Dustin was involved, because she recognized the profile photo as one he had taken at school. Alex's parents, Amy and Christopher Boston, approached the school's principal, Cathy Wentworth, for help. On May 10, 2011, Wentworth called Dustin and Melissa to her office; they admitted their involvement, and each signed a written statement.[2] Wentworth assigned them to in-school suspension for two days for their harassment of Alex. She called their parents and also sent home a "Middle School Administrative Referral Form" to explain the disciplinary action. The Referral Form included the following "Description of Infraction: [Dustin] created a false Facebook page in another student's name, pretended to be that person, and electronically distributed false, profane, and ethnically offensive information."

---

[2] In his written statement, Dustin stated:

In homeroom, Melissa and I decided to make a Facebook [page] under someone's name and she said, "Who do we hate in this room?" I said "I don't know, Alex Boston?" So we made up a username and a password for it. We went home and made the Facebook [page]. I chose Alex Boston because she followed me around and my friends did not like her and told her to leave me alone. I went home and made Alex Boston's Facebook [page]. Melissa went home to her house and pretended to be Alex. . . . I went home and posted on Alex's [fake] Facebook [page for] about 4 or 5 days. Melissa went and posted on it the same time.

4

Dustin's mother, Sandra Athearn, reviewed and signed the Referral Form the same day, May 10, 2011, and discussed the incident with her husband, Michael. The Athearns disciplined Dustin by forbidding him for one week from seeing his friends after school.

The unauthorized profile and page remained accessible to Facebook users until Facebook officials deactivated the account on April 21, 2012, not long after the Bostons filed their lawsuit on April 3, 2012.[3] During the 11 months the unauthorized profile and page could be viewed, the Athearns made no attempt to view the unauthorized page, and they took no action to determine the content of the false, profane, and ethnically offensive information that Dustin was charged with electronically distributing. They did not attempt to learn to whom Dustin had distributed the false and offensive information or whether the distribution was ongoing. They did not tell Dustin to delete the page. Furthermore, they made no attempt to determine whether the false and offensive information Dustin was charged with distributing could be corrected, deleted, or retracted.

---

[3] Indeed, Facebook's records showed that, months after Dustin's principal notified the Athearns that Dustin had been disciplined for creating the unauthorized account, the fake persona continued to extend or accept requests to become Facebook Friends with additional users and that other users viewed and posted on the unauthorized page until the day before Facebook deactivated the account .

1. The Bostons contend that there are questions of material fact regarding whether the Athearns were negligent in failing to compel Dustin to remove the Facebook page once they were notified of its existence and, therefore, that the trial court erred in granting the Athearns' motion for summary judgment on Alex's claims.

Under Georgia law, liability for the tort of a minor child is not imputed to the child's parents merely on the basis of the parent-child relationship.[4] Parents may be held directly liable, however, for their own negligence in failing to supervise or

---

[4] *Corley v. Lewless*, 227 Ga. 745, 748 (182 SE2d 766) (1971) (Other than as provided by statute, "causes of action against the parents of minor tortfeasors are rooted in the common law [of Georgia] and are predicated on something more than the mere parent-child relationship."); *Kitchens v. Harris*, 305 Ga. App. 799, 800 (701 SE2d 207) (2010) ("Parents are not liable for the torts of their minor children merely on the basis of the parent-child relationship.") (citation omitted); *Saenz v. Andrus*, 195 Ga. App. 431, 432 (2) (393 SE2d 724) (1990) ("In Georgia, unless the common law is changed by statute, parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship [.]") (citation omitted); *Dent v. Smith*, 172 Ga. App. 90 (1984) (accord); *Assurance Co. of America v. Bell*, 108 Ga. App. 766, 773 (4) (134 SE2d 540) (1963) ("Broadly stated, parents at common law are not liable for torts of their minor children.") (citation and punctuation omitted). See generally Charles R. Adams, Ga. Law of Torts § 14:1 (updated April 2014); Stephen A. Brunette, 18 Causes of Action 113, "Cause of Action Against Parent at Common Law for Injury Caused by Child," (1989, updated July 2014).

control their child with regard to conduct which poses an unreasonable risk of harming others.[5]

Where liability is based on parents' alleged failure to supervise or control their child, a key question is the foreseeability of the harm suffered by the plaintiff, that is, whether the parents had knowledge of facts from which they should have reasonably anticipated that harm to another would result unless they controlled their child's conduct. *Hill v. Morrison*, 160 Ga. App. 151 (286 SE2d 467) (1981) ("[T]he true test of parental negligence *vel non* is whether in the exercise of ordinary care he should have anticipated that harm would result from the unsupervised activities of the child and whether, if so, he exercised the proper degree of care to guard against this result.") (citation omitted).[6] The level of care that is due necessarily depends on the

---

[5] See also *Assurance Co. of America v. Bell*, 108 Ga. App. at 766-767 (4) ("A parent may be guilty of primary negligence in failing to exercise reasonable care to prevent a child under his control from creating an unreasonable risk of harm to third persons, where he has knowledge of facts from which he should reasonably anticipate that harm will otherwise result.").

[6] *Assurance Co. of America v. Bell*, 108 Ga. App. at 773-775 (4) ("A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control[,]" citing Restatement of the Law, Torts, § 316. "The true test" of whether a parent is liable for a child's tort "is

7

circumstances, which may involve an inherently dangerous instrumentality, a commonly-available object that only becomes dangerous if it is intentionally used to cause harm or is handled in an improper and dangerous manner, or no instrumentality at all.[7] Whether parents failed to use ordinary care in supervising or controlling their

whether (a) a duty was raised against the parent by the facts of the case of anticipating that in the absence of [parental] supervision a particular type of injury to another will result, and (b) whether [the parent] then exercised reasonable care to control and supervise the infant to prevent such result.") (punctuation omitted).

[7] *Kitchens v. Harris*, 305 Ga. App. at 800 (Where an injured person claims that a child's parents negligently allowed their child to gain access to a dangerous instrumentality, "the standard for imposing liability upon a parent for failing to prevent the child's action is whether the parent knew of the child's proclivity or propensity for the specific dangerous activity" that resulted in another's injury.) (citations and punctuation omitted); *Garcia v. Grepling*, 254 Ga. App. 219, 220 (561 SE2d 868) (2002) (In a case in which a child injured another, not through the use of any instrumentality, but through an unprovoked assault, the plaintiff would be required to show that the child's parent was on notice of a dangerous proclivity or propensity for the specific dangerous activity that resulted in the plaintiff's injuries.); *McNamee v. A. J. W.*, 238 Ga. App. 534, 535-536 (1) (519 SE2d 298) (1999) (In a case in which a child injured another, not through the use of any instrumentality, but through having sex with another child, the plaintiff would be required to show that the child's parents should have anticipated that harm would result from the unsupervised activities of the child and failed to exercise the proper degree of care to guard against that result.); *Saenz v. Andrus*, 195 Ga. App. at 432 (2) (An instrumentality is not inherently dangerous if such object is not likely to cause serious injury when used in a proper manner and with due care but only becomes dangerous if it is intentionally used to cause injury or is handled in a reckless and dangerous manner.); *Jackson v. Moore,* 190 Ga. App. 329, 330 (378 SE2d 726) (1989) (In a case in which a child injures another, but not through the use of a dangerous instrumentality, "the standard for imposing liability upon a parent for failing to

8

child is generally a question for the jury when the circumstances support an inference that the parents were on notice that, absent their intervention, injury was likely to result from the child's conduct.[8]

---

prevent the child's action is whether the parent knew of the child's proclivity or propensity for the specific dangerous activity" that resulted in the other person's injuries.) (citations omitted); *Hill v. Morrison*, 160 Ga. App. at 151-152 (Where a person "entrusts another with a dangerous instrument under circumstances that he has reason to know are likely to produce injury, [that person] is liable for the ensuing consequences." Recovery against a parent for the tort of a child "is permitted where through parental negligence a child is permitted access to an instrumentality which, if not properly used, is foreseeably likely to cause injury to a third person, [but] this does not make the parent liable for an injury negligently inflicted by a child where there is no dangerous proclivity known to the former and no reason to anticipate the injury which in fact occurred.") (citations omitted); *Muse v. Ozment*, 152 Ga. App. 896, 898 (264 SE2d 328) (1980) (Recovery is not permitted against a parent for a child's tort "where the parent has no special reason to anticipate" that the child may harm another, either because of the child's "known dangerous proclivities" to engage in the conduct that caused the injury or because of the child's "possession of [inherently] dangerous instrumentalities[.]"); *Assurance Co. of America v. Bell*, 108 Ga. App. at 766-767 (4) ("[P]arents may be liable where they have entrusted a dangerous instrumentality to their children or have failed to restrain their children who they know possess dangerous tendencies.") (citations and punctuation omitted).

[8] See *Jacobs v. Tyson*, 200 Ga. App. at 123 (A jury could find that a child's parents were on notice of the risk of injury where they kept a pistol in their house loaded and in a location where it was accessible to their 12-year-old while he was present in the home with another child without adult supervision, since, "[u]nlike a butcher knife or a golf club, a loaded firearm may be considered an inherently dangerous instrumentality, in that, . . . it can inflict serious bodily injury by 'going off' accidentally.") (citations omitted); *Mayer v. Self*, 178 Ga. App. 94, 95 (1) (341 SE2d 924) (1986) (A jury could find that a child's parents were on notice of the risk of injury from a golf club swung by a 5-year-old child while playing with other

9

children, in the back yard, without supervision, where there was evidence that the child's parents knew about a previous incident in which their child had hurt someone with a golf club.); *McBerry v. Ivie*, 116 Ga. App. 808, 811 (159 SE2d 108) (1967) (A jury could find that a child's parents were on notice of the risk of injury from a shotgun "which was a dangerous instrument" furnished to a 13-year-old child by his parents without reasonable instruction and supervision as to its use.).

Cf. *Kitchens v. Harris*, 305 Ga. App. at 800-801 (A child's parents were not liable for injuries resulting from the child allowing another child to use the family's all-terrain vehicle where there was no evidence that the child had ever used the ATV, or allowed another child to do so, without the permission and presence of the parents and therefore the parents were not on notice of their child's proclivity or propensity for the specific dangerous activity that resulted in the other child's injury.); *Garcia v. Grepling*, 254 Ga. App. at 220 (A child's parents were not liable for serious injuries the child inflicted on another student in an unprovoked assault, despite evidence that the child had been suspended from school twice, "once for accepting another student's challenge to a fight, knocking the other student to the ground, and then walking away and once for pushing one student, spitting on another, and using foul language and inappropriate gestures during the taping of a video for a student project," since the previous incidents "consisted of rather typical schoolyard altercations in which no one complained of any injuries" and therefore did not constitute notice of any propensity of the child to engage in the specific dangerous activity resulting in the plaintiff's claim.); *McNamee v. A. J. W.*, 238 Ga. App. at 536 (1) (Generally, Georgia law does not place a duty on parents to arrange for supervision of their teenaged children while they are away from home. In the absence of evidence that a child's parents had any reason to suspect that while they were at work he was having sex with an underaged girl in their home, the parents could not be held liable for any resulting injuries based solely upon his engaging in that activity, which he did without their knowledge.); *Saenz v. Andrus*, 195 Ga. App. at 432 (2) (A child's parents were not liable for the injury inflicted by the child throwing a butcher knife toward another, despite evidence that the child had previously thrown a pocket knife at the wall, because that previous conduct did not demonstrate any propensity to handle a butcher knife in a reckless and dangerous manner.); *Jackson v. Moore,* 190 Ga. App. 329, 330 (378 SE2d 726) (1989) (A child's mother was not liable for injuries resulting when the child surreptitiously took car keys from the

In this case, it is undisputed that Dustin used a computer and access to an Internet account improperly, in a way likely to cause harm, and with malicious intent. The Ahearns contend that they had no reason to anticipate that Dustin would engage in that conduct until after he had done so, when they received notice from the school that he had been disciplined for creating the unauthorized Facebook profile. Based on this, they contend that they cannot be held liable for negligently supervising Dustin's use of the computer and Internet account. The Ahearns' argument does not take into account that, as Dustin's parents, they *continued* to be responsible for supervising Dustin's use of the computer and Internet *after* learning that he had created the unauthorized Facebook profile. While it may be true that Alex was harmed, and the tort of defamation had accrued, when even one person viewed the

---

mother's purse and drove the car, where she had expressly forbidden the child from driving and the child had never disobeyed that instruction before and therefore she was not on notice of the child's proclivity or propensity for the specific dangerous activity that resulted in the plaintiff's injury.); *Muse v. Ozment*, 152 Ga. App. 896, 898 (264 SE2d 328) (1980) (A child's parents were not liable for injuries resulting from the child's use of a golf club that was stored in an unlocked building, where there was no evidence the child had ever before taken a golf club out and swung it in another's presence and therefore the parents were not on notice of their child's proclivity or propensity for the specific dangerous activity that resulted in the plaintiff's injury.).

11

false and offensive postings,[9] it does not follow that the Athearns' parental duty of reasonable supervision ended with the first publication.

Given the nature of libel, the original tortious conduct may continue to unfold as the false and injurious communication is published to additional readers or the defamatory content persists in a public forum without public correction or retraction.[10] With regard to the instant action, we conclude that a reasonable jury could find that, after learning on May 10, 2011, of Dustin's recent misconduct in the use of the computer and Internet account, the Ahearns failed to exercise due care in

---

[9] OCGA §§ 51-5-1 (b) ("The publication of the libelous matter is essential to recovery."); 51-5-3 ("A libel is published as soon as it is communicated to any person other than the party libeled."); *McCandliss v. Cox Enterprises*, 265 Ga. App. 377, 379 (1) (593 SE2d 856) (2004) (Because communications posted on Internet sites may be viewed by a large number of persons, over an expansive geographic area, and for an indefinite period of time, application of the single publication rule is required, and, therefore, a plaintiff must collect all of his or her damages in one action, and the statute of limitation runs from the date of initial publication.), *overruled on other grounds* by *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, (713 SE2d 456) (2011); *Sigmon v. Womack*, 158 Ga. App. 47, 50 (279 SE2d 254) (1981) (In order for a libel to be published, there must be a reading of it by a third person who understands it in a defamatory sense.).

[10] See *Mathis v. Cannon*, 276 Ga. 16, 25-29 (4) (573 SE2d 376) (2002); *Melton v. Bow*, 241 Ga. 629, 630 (247 SE2d 100) (1978); *Barnes v. O'Connell*, 300 Ga. App. 399, 400 (685 SE2d 344) (2009). See generally Charles R. Adams, Ga. Law of Torts §§ 28:1, 28:4, 28:8 (updated April 2014); Monique C. M. Leahy, 32 Causes of Action 2d 281, Section III (C), "Cause of Action for Internet Defamation" (2006, updated July 2014).

supervising and controlling such activity going forward. Given that the false and offensive statements remained on display, and continued to reach readers, for an additional eleven months, we conclude that a jury could find that the Athearns' negligence proximately caused some part of the injury Alex sustained from Dustin's actions (and inactions). Accordingly, the trial court erred in granting the Athearns' motion for summary judgment in part.

2. The Bostons contend that, "[i]n addition to their legal duty as parents, the [Ahearns] had a duty as landowners to remove the defamatory content that existed on their property[,]" citing the dissenting opinion of Presiding Judge Quillian in *Southern Bell Telephone & Telegraph v. Coastal Transmission Svc.*, 167 Ga. App. 611, 621 (307 SE2d 83) (1983). In that case, Presiding Judge Quillian cited with approval Restatement (Second) of Torts § 577 (2) (1977, updated June 2014), which provides that "[o]ne who intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited on land or chattels in his possession or under his control is subject to liability for its continued publication." Further, "when, by measures not unduly difficult or onerous, he may easily remove the defamation, he may be found liable if he intentionally fails to remove it." Id., Comment p. See

13

*Southern Bell Telephone & Telegraph v. Coastal Transmission Svc.*, 167 Ga. App.

at 621, Presiding Judge Quillian, dissenting.

> The gist of this provision of the Restatement is that

> passing on defamatory matter, i.e., republication, is publication for purposes of liability. Thus, except as to those who only deliver or transmit defamation published by a third person, one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it.

(Punctuation and footnotes omitted.) Malla Pollack, "Litigating Defamation Claims,"

128 Am. Jur. Trials 1 (2013, updated May 2014). Georgia defamation law embraces

this principle regarding republication. See *Smith v. Vencare, Inc.*, 238 Ga. App. 621,

626-627 (2) (d) (519 SE2d 735) (1999); *Baskin v. Rogers*, 229 Ga. App. 250, 252

(493 SE2d 728) (1997).

Setting aside the novel and abstract questions the Bostons' argument raises

regarding where Internet content is "exhibited,"[11] the Bostons failed to identify any

---

[11] The sole illustration given by the drafters of the Restatement concerns a communication exhibited in the physical realm:

> A writes on the wall of the men's washroom in B's tavern a statement that C is an unchaste woman. B fails to discover the writing for an hour. After he discovers it, he fails to remove it for another hour, although he has ample opportunity to do so. During the second hour the writing is read by several men. B is subject to liability for the continued

14

evidence that, apart from exercising their parental power to control Dustin's conduct, they had the ability to remove the defamation. The only evidence on the subject in the record is that, when the Bostons contacted Facebook, company officials responded that only the user who signed up for the password-protected account had the authority to remove the page from the forum. There is no evidence that the Athearns unilaterally had the ability to take down the unauthorized Facebook page by virtue of the fact that it was created on a computer in their home, because it was created using an Internet service they paid for, or otherwise. See *Mullinax v. Miller*, 242 Ga. App. 811, 814 (531 SE2d 390) (2000) (In the context of our libel laws, "[p]ublication entails the ability to *control* the libel.") (citations and punctuation omitted; emphasis in original). Because there is no evidence supporting this theory of recovery, the trial court did not err in granting the Athearns' motion for summary judgment in part.

*Judgment affirmed in part and reversed in part. Phipps, C. J., and McMillian, J., concur.*

---

publication of the libel during the second hour, although not for the original publication.

Restatement (Second) of Torts § 577, Comment on subsection (2), Illustration. See David Elder, "Defamation: A Lawyer's Guide," § 1:24 (updated July 2014) (discussing Restatement (Second) of Torts § 577 and related cases).