**FIFTH DIVISION**
**RICKMAN, C. J.,**
**McFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**March 11, 2022**

# In the Court of Appeals of Georgia

A21A1525. NORTH ATLANTA GOLF OPERATIONS, LLC et al.
    v. WARD.

McFADDEN, Presiding Judge.

Over the course of several years, Peter J. Ward made numerous comments on the social networking service, Twitter, that disparaged the Golf Club of Georgia (hereinafter "the Club"); Eugene B. "Ben" Kenny (the sole member of North Atlanta Golf Operations, LLC, which does business as the Club); Kenny's stepdaughter, Jacqueline A. Welch (the Club's former general manager ); and Jacqueline Welch's husband, Samuel A. Welch (the Club's former greenskeeper ). This appeal concerns a lawsuit that North Atlanta Golf Operations, Kenny, and the Welches (collectively "the plaintiffs") brought against Ward for those Twitter posts. In the suit, the plaintiffs asserted claims for libel, tortious interference with business relations,

injunctive relief, punitive damages, and attorney fees and costs of litigation. The trial court granted summary judgment to Ward on all of those claims, and the plaintiffs appeal.

As detailed below, Ward is not entitled to summary judgment on the libel claim. Many of the Twitter posts are not actionable, either because of the running of the applicable one-year statute of limitation or because they do not assert facts capable of being proved false. But some of the posts *do* assert facts capable of being proved false, and the evidence regarding the falsity of those facts is in dispute. Because those posts pertain to the plaintiffs' performance in their trade, business, or profession, "damage is inferred." OCGA § 51-5-4 (b). And genuine issues of material fact exist as to the remaining elements of the libel claim. So we reverse the grant of summary judgment on the libel claim.

However, Ward is entitled to summary judgment on the claim for tortious interference with business relations because the plaintiffs have failed to point to evidence of special damages, as required for that cause of action. So we affirm the grant of summary judgment on that claim.

Finally, we reverse the grant of summary judgment as to the remaining claims: punitive damages, attorney fees, and injunctive relief. The trial court granted

2

summary judgment on these claims on the ground that the underlying claims of libel and tortious interference failed as a matter of law. But the libel claim does not fail as a matter of law, and we decline to affirm under the right-for-any-reason rule.

1. *Facts and procedural history.*

"[V]iew[ing] the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the [plaintiffs, as] nonmovant[s,]" *Murray v. Community Health Systems Professional Corp.*, 345 Ga. App. 279, 280 (811 SE2d 531) (2018) (citation omitted), the evidence shows that North Atlanta Golf Operations acquired the Club in 2014. At that time, Ward was a member of the Club. Unhappy with the management of the Club after North Atlanta Golf Operations's acquisition, in 2016 Ward established a Twitter account under the name "Secret GCOG Member" and began making Twitter posts disparaging the Club, its owner, and its management, specifically Kenny and the Welches. Some of the posts asserted that the plaintiffs were not managing or maintaining the Club properly, that they were responsible for a decline in the Club, and, as to the Welches, that they should be fired.

In 2017, Kenny terminated Ward's Club membership in connection with a dispute over his residency and his eligibility for a particular membership status. Ward subsequently changed the name on his Twitter account to "Former CGOG Member"

and continued making posts about the Club and the plaintiffs. In 2020, he testified that he had stopped posting to the account.

On December 19, 2018, the plaintiffs filed this action against Ward, in which they asserted claims for libel, tortious interference with business relations, injunctive relief, punitive damages, and attorney fees and expenses of litigation. Ward moved for summary judgment, and, after a hearing, the trial court granted Ward's motion on all claims.

2. *Claim for libel.*

The plaintiffs argue that the trial court erred in granting Ward summary judgment on their claim for libel. As detailed below, we agree with the plaintiffs that Ward is not entitled to summary judgment on this claim, although we find that not all of Ward's posts constitute actionable libel.

Libel is a form of defamation. It is the "false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). Our Supreme Court has held that, "[u]nder Georgia law, a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the

4

defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 650 (1) (b) (864 SE2d 422) (2021) (citation omitted).

The plaintiffs argue that their claim for libel is supported by the entire body of Twitter posts published by Ward between 2016 and 2019. The record reflects that Ward produced those posts to the plaintiffs in response to a document request and that the plaintiffs put them into evidence as an exhibit to Ward's deposition. So, contrary to Ward's argument on appeal, the posts are part of the record and may be considered in determining whether Ward is entitled to summary judgment. But in their appellate brief, the plaintiffs specifically point to only a handful of the hundreds of Twitter posts contained in that exhibit, and we have limited our analysis to those posts. See generally *Grace v. Lowery*, 359 Ga. App. 881, 883 (860 SE2d 159) (2021) (plaintiff asserting defamation must identify specific statements supporting that claim); *City of Albany v. Pait*, 335 Ga. App. 215, 221 (5) (780 SE2d 103) (2015) (noting that plaintiff in defamation case failed to specify which statements were supposedly defamatory and that "it is not the function of this court to cull the record on behalf of a party in search of instances of error") (citation omitted). As detailed below, genuine issues of material fact exist as to whether the plaintiffs can make this

5

showing as to some, but not all, of the identified Twitter posts. So Ward is not entitled to summary judgment on the libel claim.

(a) *A jury question exists as to whether some of the Twitter posts contain actionable libel.*

(i) *False and defamatory statements.*

A statement that "[m]ak[es] charges against another in reference to his trade, office, or profession, calculated to injure him therein[,]" is defamation per se under OCGA § 51-5-4 (a) (3), which by its terms applies to slander (oral defamation) but which has "been engrafted into the libel statute[.]" *Cottrell v. Smith*, 299 Ga. 517, 522, 524 (II) (A) (788 SE2d 772) (2016). See also *Smith v. DiFrancesco*, 341 Ga. App. 786, 788-789 (1) (802 SE2d 69) (2017). "The kind of aspersion [that constitutes defamation per se under OCGA § 51-5-4 (a) (3)] must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation." *Bellemeade, LLC v. Stoker*, 280 Ga. 635, 637 (631 SE2d 693) (2006) (citation omitted).

Nevertheless, "[t]he truth of the charge made may always be proved in justification of an alleged libel or slander." OCGA § 51-5-6. This means that "[t]ruth is a complete defense to alleged libel or slander. And, a defamation action will lie

6

only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." *Cottrell*, 299 Ga. at 523 (II) (A) (citations and footnote omitted). "An assertion that cannot be proved false cannot be held libelous . . . however unreasonable the opinion or vituperous the expressing of it may be." *Gast v. Brittain*, 277 Ga. 340, 341 (589 SE2d 63) (2003) (citation and punctuation omitted). Consequently,

> a plaintiff who claims that a published opinion defamed him will generally be unable to carry his burden of proving the essential element of falsity. Still, there is no wholesale defamation exception for anything that might be labeled opinion. An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false.

*Cottrell*, 299 Ga. at 523 (II) (A) (citations and punctuation omitted).

A common theme of the Twitter posts is Ward's opinion that the plaintiffs were mismanaging the Club and poorly performing their duties. In some of those posts, Ward asserted specific facts as the basis for that opinion. For example, in an April 22, 2018 post, Ward blamed greenskeeper Samuel Welch for what Ward asserted was the poor physical condition of the greens, stating: "Have you noticed all the dead grass

7

collars around the greens? @MEvansGolfPro @samuelawelch needs to be fired!!! Nepotism is alive and strong at The Golf Club of Georgia!!" And in an April 10, 2018 post, Ward blamed owner Kenny and general manager Jacqueline Welch for 50 percent decreases in both the Club's membership and its revenue, stating: "Pretty sad that members pay $750 a month but dislike atmosphere Ben and Jacqueline created that they drive down the street to local tavern to drink and eat! Ownership and management still clueless and that's why revenue and membership down 50%. #dobetter." Similarly, in an April 5, 2018 post, Ward stated: "Jaquline [sic] and Ben sitting around Golf Club of Georgia brainstorming. Hmm we have very little play, we ruined the club, and revenue is down 50% what should we do? Let's open up an extra day this week and understaff the place again, yeah that will piss off those stupid members!" These posts are "especially injurious to the plaintiff[s'] reputation[s] because of the particular demands or qualifications of [their respective] vocation[s]" as the owner, general manager, and greenskeeper of the Club, and so they are defamation per se. See *Bellemeade, LLC*, 280 Ga. at 637 (citation omitted).

Certainly there are aspects of opinion in these posts; they can be reasonably interpreted as statements of Ward's personal belief that Kenny and the Welches were not doing a good job of managing and maintaining the Club and its courses. But he

8

asserts, as ground for his opinions, specific facts that can be proved false — that grass on the courses was dead and that both the Club's membership and its revenue had dropped by 50 percent. Genuine issues of fact exist as to the falsity of those factual assertions. There is evidence in the record that the Club grounds were actually in very good condition. And there is record evidence that, since North Atlanta Golf Operations acquired the Club, its membership, which was its main source of revenue, had remained steady and that the Club was profitable.

Where, as here, a defendant offers specific statements capable of being proved false in explanation for a negative opinion about a plaintiff's professional abilities, that statement can be the ground for a defamation claim. See *Elder v. Cardoso*, 205 Ga. App. 144, 145 (1) (421 SE2d 753) (1992); see also *Smith*, 341 Ga. App. at 788-789 (1). The "explanation . . . must have been *truthful* to avoid potential liability for [defamation]." *Elder*, 205 Ga. App. at 145 (1) (emphasis in original). Because some of Ward's Twitter posts contain such specific explanatory statements, and the plaintiffs have pointed to evidence that those explanations were not truthful, a genuine issue of material fact exists as to this element of the libel claim. See *Stalvey v. Atlanta Business Chronicle*, 202 Ga. App. 597, 600 (1) (414 SE2d 898) (1992) (genuine issues of material fact remained as to the defendant's liability for defamation

where its statement that an apartment's occupancy rate "was relatively low, about 55 percent," was capable of being proved false and could "be taken as an attack on plaintiff's reputation as a property manager") (punctuation omitted).

(ii) *Unprivileged communications to third parties.*

There is no dispute that the Twitter posts were communicated to third parties. And we agree with the plaintiffs that a jury question exists as to privilege. Georgia law extends a privilege to, among other things, "[s]tatements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned[.]" OCGA § 51-5-7 (3). But Ward "bears the burden of proving [t]his claim of privilege[.]" *Chaney v. Harrison & Lyman, LLC*, 308 Ga. App. 808, 814 (1) (c) (708 SE2d 672) (2011). He is entitled to summary judgment on this ground only if he "has established as a matter of law that he made privileged statements. To do so, he must show good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion and publication to proper persons." Id. (citation and punctuation omitted).

Ward has not shown as a matter of law that he was entitled to this privilege. Although he testified in his deposition that he had an interest to be upheld, namely his "passion and love for Golf Club of Georgia" and his concern that management

10

appeared unwilling to receive feedback, he also testified that he did not attempt to give management any feedback, instead choosing Twitter as the forum for raising the problems he perceived at the Club. "In general, questions of privilege are for the jury to decide[,]" *Murray*, 345 Ga. App. at 287 (2), and a jury question exists as to Ward's privilege in this case. Cf. *Chaney*, 308 Ga. App. at 816 (1) (c) (i) (the defendant demonstrated entitlement to privilege as a matter of law where he had "communicat[ed] with the proper people about a topic as to which he maintained an interest" and "his statements about [the plaintiff] were properly limited in scope and nothing in the record indicates that they were not made as part of a good faith effort to resolve [his concerns]").

(iii) *Fault by the defendant.*

Ward argued to the trial court that the plaintiffs were required to show actual malice to avoid the conditional privilege of OCGA § 51-5-7 (3), and that they had failed to do so. But as discussed above, the actionable posts in this case involve defamation per se because they accused the plaintiffs of a lack of skill or ability in their profession or trade. See OCGA § 51-5-4 (a) (3). In cases involving private

figures,[1] the necessary fault is inferred if there is defamation per se and the statement is not privileged. See *RCO Legal, P. S. v. Johnson*, 347 Ga. App. 661, 672 (2) (c) (ii) (820 SE2d 491) (2018). As discussed above, Ward's entitlement to a privilege is a jury question. "Even assuming, arguendo, that the statement[s made in the Twitter posts were] so privileged, this privilege is conditional rather than absolute, and it remains for a jury to determine whether the intention was such as to make the defense complete." *Watkins v. Laser/Print-Atlanta*, 183 Ga. App. 172, 174 (3) (358 SE2d 477) (1987) (citation omitted). So it follows that whether the plaintiffs could show the fault necessary for their libel claim also is a jury question.

(iv) *Special harm or actionability irrespective of special harm.*

Because the posts concern the plaintiffs' trade, office, or occupation and are defamation per se, damages are also inferred and the plaintiffs need not show special damages. See OCGA § 51-5-4 (a) (3); *Cottrell*, 299 Ga. at 524 (II) (A); *Walker v. Walker*, 293 Ga. App. 872, 876 (2) (e) (668 SE2d 330) (2008).

(b) *Some of the Twitter posts are not actionable as a matter of law.*

_____

[1] Ward has not argued that the plaintiffs must show actual malice because they are public or limited-purpose public figures. See generally *Infinite Energy v. Pardue*, 310 Ga. App. 355, 358-361 (2) (713 SE2d 456) (2011) (discussing law governing determination of plaintiff's status as public or private figure and its impact on element of fault in defamation claim).

12

Although Ward is not entitled to summary judgment on the libel claim because some of the Twitter posts are actionable, not all of the posts support such a claim.

(i) *Statements of opinion not capable of being proven false.*

Many of the posts cited by the plaintiffs in their appellate brief contain only opinions or subjective assessments as to which reasonable minds can differ, rather than statements of fact that can be proven false. For example, some of the Twitter posts discuss the "poor" reputation of Kenny or the Club. Another describes the grass quality as "a joke" and states that there is "not a single redeeming quality about [Samuel Welch's] work[.]" Unlike the posts discussed above, where Ward tied his opinions about the plaintiffs' poor performance to statements of fact capable of being proven false, posts such as these are "mere statement[s] of opinion or rhetorical hyperbole [that are] not actionable." *Grace*, 359 Ga. App. at 884. See *McCall v. Couture*, 293 Ga. App. 305, 308 (2) (666 SE2d 637) (2008) (statements describing an organization's treasurer as a "weak link" who "should not be allowed to retain the responsibility of [his role] in light of his inability to manage his own finances" were "wholly subjective opinion not capable of proof and thus cannot support an action for defamation"); *Atlanta Humane Society v. Mills*, 274 Ga. App. 159, 166 (3) (618 SE2d 18) (2005) ("obviously exaggerated and unprovable assertions" cannot be held

13

libelous); *Collins v.Cox Enterprises*, 215 Ga. App. 679, 680 (452 SE2d 226) (1994) (speculative statements that cannot be proven as absolutely true or false are "the sort of opinion that is not actionable as libel"); *Elder*, 205 Ga. App. at 144-145 (1) (general negative opinions regarding a plaintiff's professional abilities, upon which reasonable persons might have differing opinions and which cannot be proved false, are not defamatory); *S&W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 233-235 (1) (390 SE2d 228) (1989) (a radio talk-show host's "series of critical and unflattering comments" about a restaurant and its manager, which were expressions of opinion or hyperbole that "could not reasonably have been interpreted by the listeners as a statement of fact," were not actionable defamation).

(ii) *Posts published outside the one-year limitation period.*

In addition, as the trial court correctly held, the one-year statute of limitation that applies in defamation claims, OCGA § 9-3-33, bars any claim for libel based on posts published before December 19, 2017. "In Georgia, . . . the single publication rule governs actions for libel." *McCandliss v. Cox Enterprises*, 265 Ga. App. 377, 378 (1) (593 SE2d 856) (2004) (citation and punctuation omitted), overruled in part on other grounds by *Infinite Energy v. Pardue*, 310 Ga. App. 355, 363 (4) (713 SE2d

14

456) (2011). This includes actions for libel based on statements made on the internet. See *McCandliss*, 265 Ga. App. at 380 (1).

"A libel is published as soon as it is communicated to any person other than the party libeled." OCGA § 51-5-3. "Under the single publication rule, one publication is only one libel, regardless of the times it was exposed to the view of different people[.]" *McCandliss*, 265 Ga. App. at 378 (1) (citations and punctuation omitted). "The rule is a device by which a widely circulated libel is litigated in one trial to avoid a multiplicity of suits and an almost endless tolling of the statute of limitation[.]" *Southern Bell Tel. & Tel. Co. v. Coastal Transmissions Svc.*, 167 Ga. App. 611, 616 (2) (b) (307 SE2d 83) (1983) (citation and punctuation omitted). Under the rule, "the statute of limitation[ ] is to run from the date of initial publication." *McCandliss*, 265 Ga. App. at 378 (1) (citation omitted). The plaintiffs filed their action on December 19, 2018. So, under the single publication rule, the statute of limitation bars libel claims based on Twitter posts that were initially published more than a year before December 19, 2017.

Nevertheless, the plaintiffs argue that the statute of limitation did not bar their libel claims based on the earlier-published Twitter posts because the posts fall into

15

what the plaintiffs describes as a "continuing publication" rule. They cite, as authority for this rule, *Boston v. Athearn*, 329 Ga. App. 890 (764 SE2d 582) (2014).

*Boston v. Athearn* is inapposite. Notably, that decision did not involve claims of libel against the defendants; it involved tort claims based on the defendants' failure to mitigate damage caused by the defamatory actions of another person (their minor child, who had posted defamatory material on the internet). In holding that the parents could be liable on a theory that they had breached their duty as parents to supervise and control their child, we acknowledged in *Boston* that "the tort of defamation [committed by their child] had accrued[ ] when even one person viewed the false and offensive postings[.]" *Boston*, 329 Ga. App. at 896 (1). But we held that, just because the tort of defamation accrues with the first publication of the defamatory material, "it does not follow that the [defendants'] parental duty of reasonable supervision ended with the first publication." Id. Because the claim against the parents was based on their allegedly negligent failure to control their child, we held they could be liable for harm that "unfold[ed] as the false and injurious communication [was] published to additional readers or the defamatory content persist[ed] in a public forum without public correction or retraction." Id.

16

So, contrary to the plaintiffs' assertion, *Boston v. Athearn* does not stand for the proposition that, under a theory of "continuing publication," Ward can be liable for defamation for Twitter posts published more than a year before the plaintiffs filed their lawsuit. Instead, *Boston* is consistent with the single publication rule described above, which supports the trial court's determination that the statute of limitation bars any libel claims based on Twitter posts published before December 19, 2017.

3. *Claim for tortious interference with business relations.*

The plaintiffs argue that the trial court erred in granting Ward summary judgment on their claim of tortious interference with business relations. The essential features of this cause of action "are that the defendant, acting improperly, without privilege, and with the malicious intent to injure plaintiff, induces a third party not to enter into or to continue a business relationship with plaintiff, which causes plaintiff financial injury." *SAWS at Seven Hills, LLC v. Forestar Realty*, 342 Ga. App. 780, 788-789 (3) (805 SE2d 270) (2017) (citation omitted). An essential element of this claim "is a showing of financial injury resulting from the alleged interference." *Bullock v. Jeon*, 226 Ga. App. 875, 878 (3) (487 SE2d 692) (1997). As the trial court correctly held, the plaintiffs have not pointed to any evidence demonstrating that Ward's Twitter posts caused a third party not to enter into or to continue a business

17

relationship with the Club, or to any other specific financial injury actually flowing from the Twitter posts. For this reason, Ward was entitled to summary judgment on this claim. See *SAWS at Seven Hills*, 342 Ga. App. at 789 (3) (where the plaintiff real estate developer was "unable to identify a single prospective home buyer whose sale it lost due to the alleged actions of [the defendant HOA management company], nor any other financial loss[,]" the defendant was entitled to summary judgment on a tortious interference claim).

4. *Remaining claims.*

The trial court granted summary judgment to Ward on the plaintiffs' remaining claims — for punitive damages, attorney fees, and injunctive relief — on the ground that the plaintiffs are not entitled to those remedies because their underlying claims for libel and tortious interference failed as a matter of law. Because we have reversed the grant of summary judgment on the libel claim, the trial court's basis for granting summary judgment on the remaining claims no longer exists. We may affirm a grant of summary judgment as right for any reason, where appropriate, even under these circumstances. See *Hughes v. First Acceptance Ins. Co. of Ga.*, 343 Ga. App. 693, 698 (2) (b) (808 SE2d 103) (2017), reversed on other grounds at 305 Ga. 489 (826 SE2d 71) (2019). But Ward has not argued that affirmance would be right for any

18

other reason, nor have the parties briefed that issue on appeal, so we decline to consider whether other grounds exist for affirming the grant of summary judgment on the remaining claims. See generally *Hardin v. Hardin*, 301 Ga. 532, 537 (801 SE2d 774) (2017) (noting that application of the right-for-any-reason rule is discretionary). Instead, we reverse the grant of summary judgment on the claims for punitive damages, attorney fees, and injunctive relief.

5. *Summary*.

In summary, we affirm the grant of summary judgment to Ward on the plaintiffs' claim for tortious interference with business relations.

We reverse the grant of summary judgment to Ward on the plaintiffs' claims for libel, punitive damages, attorney fees, and injunctive relief. Those claims will now return to the trial court, which will have the authority to resolve them in any manner not inconsistent with this opinion.

For example this opinion does not preclude the plaintiffs from identifying additional Twitter posts, not specifically pointed to in connection with the summary judgment motion, that they contend are libelous. Similarly, this opinion does not preclude Ward from arguing that the plaintiffs are not entitled to punitive damages, attorney fees, or injunctive relief even if they have an actionable claim for libel.

19

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Herbert E. Phipps concurs. Rickman, C. J. concurs fully in Divisions 1,2, 3, and 4, and in the judgment only in Division 5.*