## A00A2012. SMITH v. BROOKS et al.

### (545 SE2d 135)

SMITH, Presiding Judge.

Debbie Smith brought this action as custodian of Patrick Johnson, a ten-year-old child, after Patrick was accidentally shot and wounded by his brother Danny with a .22 rifle while visiting Gary Brooks, Jr. at the Brookses' home. Smith contended that the Brookses were negligent in allowing the boys access to a firearm and ammunition while they were absent from the home. After discovery, including depositions of the parties and witnesses, the trial court granted summary judgment in favor of the Brookses. Because Smith has failed to show, as required, both that the Brookses negligently made available a dangerous instrumentality to their son and that they knew of a proclivity on the part of their son for engaging in the specific dangerous activity, we must affirm.

Construed in favor of the respondent, the evidence shows that Smith's sons, Patrick and Danny Johnson, were ten and twelve years old respectively at the time of the incident. They told their mother they were going to the park, but Patrick went to the Brookses' home instead and Danny followed him. When they arrived, they found 12-year-old Gary, Jr. home alone.

Both Gary, Jr. and Danny testified that Patrick continually asked to shoot the antique rifle hanging over the fireplace mantel. This single-shot .22 caliber rifle was approximately 100 years old, had not been fired for years, and was worn out and partially inoperable, requiring the use of a pair of pliers to remove a shell. The rifle, which had belonged to Mr. Brooks's grandfather, was hanging above the mantelpiece between six and one-half and seven feet from the floor.

Patrick continued to ask to shoot the rifle until Danny told Gary, Jr. to "just let him do it so he'll shut up." But the rifle was unloaded, and Mr. Brooks kept all his other guns, all ammunition, and a knife collection locked in a gun cabinet in his bedroom. This cabinet was a solid oak cabinet with a half-inch plywood back, weighing between 75

and 100 pounds. It was kept locked, and Mr. Brooks kept the keys with him at all times. One or more of the boys pried open the back of the cabinet. According to Gary, Jr., he and Patrick used a screwdriver to pry off the back of the cabinet. Danny, on the other hand, contended that Gary, Jr. opened the back of the cabinet by himself and did so easily. Patrick claimed the cabinet was "already opened" when he first walked by.

Because the boys were unable to get into the drawer in which the ammunition was stored, they removed cartridges from another .22 rifle that was stored in the upper part of the gun cabinet.[1] The boys then took turns loading the antique rifle in the living room and firing it out a window at the circuit breaker on a nearby telephone pole, each time removing the spent shell with a pair of pliers. After they reloaded the rifle for the final time, Danny was holding it in his lap with his finger on the trigger when Gary, Jr. slipped from the arm of his chair and struck him, causing the rifle to discharge. The bullet struck Patrick in the neck, injuring him.

Mr. and Mrs. Brooks testified that Gary, Jr. had been instructed not to touch any firearm without an adult present. They also stated that to their knowledge he had never before handled a firearm or ammunition without an adult present and had never disturbed Mr. Brooks's gun cabinet. Gary, Jr. also testified that he had never done so.

The law governing this case is well established:

> It is well settled in this state that parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship. When liability exists it is based on a principal-agent or a master-servant relationship where the negligence of the child is imputed to the parent, or it is based on the negligence of the parent in some factual situation such as allowing the child to have unsupervised control of a dangerous instrumentality. Where the child is not pursuing the parent's business or acting on the parent's behalf at the time the incident occurred, the parent cannot be held liable on a theory of agency. In cases of this sort the question is whether the facts of the case impose upon the parent a duty to anticipate injury to another through the child's use of the instrumentality. Recovery has been permitted where there was some parental negligence in furnishing or permitting a child access to an instrumentality with

---

[1] While Danny and Patrick testified that Gary, Jr. removed the ammunition from the gun, Gary, Jr. testified that Patrick used a pair of pliers to disassemble part of the rifle and remove the cartridges.

which the child likely would injure a third party.

(Citations and punctuation omitted.) *Jacobs v. Tyson*, 200 Ga. App. 123-124 (407 SE2d 62) (1991). A clear distinction is made between the parent actually furnishing or providing the dangerous instrumentality to the child and "those cases in which the parent did not furnish the dangerous instrumentality but through negligence allowed access thereto to the child." (Punctuation and emphasis omitted.) *Jackson v. Wimbley*, 218 Ga. App. 698 (1) (463 SE2d 48) (1995). The standard in the latter case

> is whether the parent knew of the child's proclivity or propensity for the specific dangerous activity. If such knowledge cannot be shown on the part of the parent, then liability cannot attach to her, as a parent is not an insurer that the child will not harm another.

(Citation and punctuation omitted.) Id. See also *Saenz v. Andrus*, 195 Ga. App. 431, 432-433 (2) (393 SE2d 724) (1990).

The law is different with respect to an "inherently dangerous" instrumentality such as a *loaded* firearm. In *Jacobs*, supra, we held that a loaded firearm which a child discovered in an unlocked dresser drawer amounted to an inherently dangerous instrumentality, basing this conclusion upon the potential for accidental discharge without touching the trigger, as was alleged in that case. We concluded that a higher standard of care therefore applied. Id. at 125. *Glean v. Smith*, 116 Ga. App. 111, 114 (156 SE2d 507) (1967), upon which *Jacobs* relies, reversed a general demurrer to a petition alleging that a loaded pistol was left in a "child size bureau" in a children's playroom. Id. at 112 (1). In this case, however, the firearm was not loaded, and the higher standard of care therefore is inapplicable.[2]

Smith points to evidence that though the gun cabinet was locked, the back of the cabinet was insufficiently secure. Although they did not enter the room in which the cabinet was located, the Johnson boys testified that the back of the cabinet was made of cardboard, that Gary, Jr. easily opened the back of the cabinet, and that it had been opened "before we got over there." Mr. Brooks also testified that the cabinet "wasn't that heavy made," and Mrs. Brooks testified that the cabinet was given away after the incident because "[i]t was proven unsafe." From this testimony, Smith argues that the Brookses

---

[2] We accordingly do not reach the contention raised by the Brookses that this heightened standard of care applies only to those actually handling the dangerous instrumentality at the time of the injury, as stated in the whole court decision of *Blackwell v. Cantrell*, 169 Ga. App. 795, 797 (2) (315 SE2d 29) (1984).

were negligent because they should have known that someone could break into the back of the gun cabinet.[3]

But even assuming the truth of Smith's assertion that the gun cabinet was insufficiently secure, the law requires that she demonstrate not only that the Brookses were aware of that fact, but also that they knew of a propensity on the part of Gary, Jr. to commit the specific act that caused harm. *Saenz*, supra at 433. No evidence was presented that the parents had reason to anticipate that their son would ignore their instructions and handle or allow other boys to handle an antique, partially inoperable firearm, that one or more of the boys would pry open the back of a locked gun cabinet to remove cartridges from another rifle after being unable to break into an ammunition storage drawer, and that they would use a tool not intended for the purpose to load and fire the antique rifle repeatedly until one of them was injured. These persistent efforts to obtain ammunition and discharge a firearm, in the absence of any evidence showing that the parents were aware of the likelihood of such behavior, do not create a jury issue as to the parents' liability. Moreover, the children all disobeyed their parents' explicit instructions that they were not to handle firearms or were not to handle them without parental supervision. See *Shaw v. Buice*, 130 Ga. App. 876, 878 (204 SE2d 798) (1974).

In this case, no evidence was presented that Gary, Jr. had any known propensity to misuse firearms or to break into a locked gun cabinet in his parents' absence. When asked if Gary, Jr. normally obeyed him, Mr. Brooks testified, "We've had some trouble with him before and all." Also, Mrs. Brooks testified to problems with discipline and with his grades in school. But no further questions were asked or answered regarding any specific instance in which Gary, Jr. did not obey his parents or as to any specific disciplinary problems they had experienced. Mr. Brooks acknowledged that he did not approve of some of Gary, Jr.'s friends, but again no specific testimony was elicited regarding the reasons for this disapproval. None of this evidence rises to the level of a "proclivity or propensity for the specific dangerous activity" in question.

Smith acknowledges that the factors generally required in Georgia decisions finding a jury issue on negligent storage of a firearm are not present in this case. She specifically concedes that no evi-

---

[3] Smith also argues that the Brookses committed spoliation of evidence by disposing of the gun cabinet after the incident. But the record does not reflect that this argument was raised in the trial court, and we therefore do not consider it here. *Freeman v. Pittman*, 220 Ga. App. 672, 673 (1) (469 SE2d 543) (1996). We note, moreover, that the record does not reflect that Smith ever sought through her attorney or by court order to have the cabinet preserved as evidence, despite the lapse of nearly two years before filing this action, approximately eight days before the statute of limitation expired.

dence was presented of any propensity on the part of Gary, Jr. to misuse firearms. She suggests that "increasing societal concern for the accessibility of guns to children" nevertheless demands a holding that a jury question exists here. We understand and sympathize with Smith's concern as a parent for her son's injury, as well as her interest in preventing such injuries to others. Our duty, however, is to follow existing law, which includes specific evidentiary requirements that Smith has not met. Any change in these requirements must originate with the General Assembly.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 6, 2001.

*Webb, Stuckey & Lindsey, Martin C. Jones, William M. McHugh, Jr., Sharon S. Whitwell,* for appellant.

*Seacrest, Karesh, Tate & Bicknese, Gary L. Seacrest, Annarita M. Busbee,* for appellees.