**FIFTH DIVISION
MCFADDEN, C. J.,
MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1651. BURGUNDY GUZMAN, AS SURVIVING SPOUSE
  OF PAUL GUZMAN et al. v. LINK.

McMillian, Presiding Judge.

After an automobile accident involving a car driven by Tatum Guzman and a vehicle driven by Carson Link, which resulted in the death of Tatum's father, Paul Guzman,[1] a passenger in the Guzman car, Appellant Burgundy Guzman[2] filed suit against Link for wrongful death. She appeals the trial court's order on cross-motions for partial summary judgment addressing Link's affirmative defense under Georgia's family purpose doctrine. Because we find that the family purpose doctrine may not be used defensively to impute liability for any negligence by Tatum to Paul so as to bar or reduce any recovery arising from his death, we reverse both the denial of Burgundy's motion for partial summary judgment and the grant of Link's cross-

---

[1] For ease of reference and to avoid confusion, we will refer to the Guzmans by their first names.

[2] Burgundy is Paul's widow.

motion on that issue. Further, because we find that genuine issues of fact remain as to whether the family purpose doctrine applied to the Guzman car, we reverse the grant of Link's cross-motion and affirm the denial of Burgundy's motion to the extent that the motions sought relief on that ground.

The accident in this case occurred on November 27, 2016, when the Guzman car, with Tatum at the wheel, approached an intersection from the east and began to turn left as the light turned yellow. At around the same time, Link's vehicle was approaching the same intersection from the west as the light turned yellow, and it continued into the intersection. It is undisputed that Link's vehicle struck the passenger side of the Guzman car where Paul was seated in the back seat, resulting in his death, although the parties dispute the sequence of events leading up to, and who caused, the collision.

Several months later, on February 10, 2017, Burgundy filed this wrongful death action against Link in her capacities as Paul's surviving spouse and as the administrator of his estate. In his answer to Burgundy's complaint, Link asserted the following affirmative defense:

> At all times material hereto, the vehicle operated by [Tatum] was owned by [Paul] and [Tatum] was operating said vehicle with his permission

2

and as a member of his household. The vehicle being driven by [Tatum] at the time of the motor vehicle collision was a family purpose vehicle and therefore, [Tatum] was driving said automobile as the agent of her father, [Paul]. Therefore the Estate of PAUL GUZMAN is vicariously liable for the negligence of [Tatum] which was the proximate cause of the motor vehicle collision.[3]

Link also asserted a counterclaim seeking recovery for damages he suffered in the accident based on Tatum's negligence, which he alleged caused the accident and for which he alleged Paul was liable under the family purpose doctrine, as well as damages for Paul's negligent entrustment of the Guzman car to Tatum.

Following discovery, Burgundy moved for partial summary judgment on Link's fourth affirmative defense on the grounds that the family purpose doctrine is a "plaintiff's rule[,]" and thus "the negligence of a family-member driver may not be imputed to an owner-passenger under the family-purpose doctrine in an action against a third-party to recover for the owner-passenger's injuries." Link filed a cross-motion for summary judgment on the same issue, asserting that any negligence by Tatum in operating the car owned by Paul should be imputed to Paul and his estate under the

---

[3] Link also asserted an affirmative defense seeking "an apportionment of damages in relation to the degree of fault of all parties or persons."

family purpose doctrine and applied to limit or bar Burgundy's claims as a matter of law. Link's briefing on the issue confined the analysis to the application of the family purpose doctrine as a bar to Burgundy's recovery on her claims and did seek not summary judgment as to whether Link could rely on the family purpose doctrine in his counterclaim against Paul's estate for Link's own damages.[4]

At the hearing on the parties' cross-motions, however, the trial court sua sponte raised the issue of whether Link could rely on the family purpose doctrine in his counterclaim and later entered an order granting Link's motion for partial summary judgment and denying Burgundy's motion. In its order, the trial court identified two issues for adjudication: (1) "whether the Family Purpose Doctrine may be utilized solely, as Plaintiff describes it, 'as a sword' to recover from a defendant and not a 'shield' for defendant to avoid liability[;]" and (2) "whether the 2014 Kia Soul registered to Paul Guzman, but operated by Tatum Guzman, falls under the ambit of the Family Purpose Doctrine, making the Estate of Paul Guzman vicariously liable to Carsten Link for damages." The trial court then analyzed the law solely in the context of Link's counterclaim against Paul's Estate, stating that "[t]he core issue is

---

[4] Link did reference his counterclaim based on the family purpose doctrine, but only in support of his claim that he should also be able to apply the doctrine as an affirmative defense.

4

whether the state's modified comparative negligence scheme applies in a counterclaim that invokes the Family Purpose Doctrine[.]" The court concluded that the doctrine "may be used in a counterclaim" as a means of offsetting the plaintiff's claimed damages, explaining that it "is neither a 'sword' or a 'shield[,]' but a 'swinging door' that may be utilized by all sides of an action to determine agency, and fix liability." The trial court then held that Link's "counterclaim could proceed and [Burgundy's] assertion that the Family Purpose Doctrine may only be utilized by plaintiffs is unsupported by the statutory law of Georgia." With regard to the second issue, the trial court found as a matter of law that the facts of record established all the elements of the family purpose doctrine, that the family purpose doctrine applied to the Guzman car, and "that Paul Guzman is vicariously liable for his own death." This appeal followed.

1. We turn first to Link's motion to dismiss this appeal on jurisdictional grounds, because "[t]his Court has a duty to inquire into its jurisdiction to entertain each appeal." (Citation and punctuation omitted.) *City of Dublin School Dist. v. MMT Holdings, LLC*, 351 Ga. App. 112, 114 (830 SE2d 487) (2019).

OCGA § 9-11-56 (c) provides that "[a] summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of

5

damage." Link's motion sought a determination of the merits of his affirmative defense asserting that liability should be imputed from Tatum to Paul under the family purpose doctrine for purposes of reducing or barring Burgundy's claimed damages, and, in fact, the trial court upheld that affirmative defense, finding as a matter of law that the doctrine applied. Therefore, the trial court properly considered Link's motion as one for partial summary judgment on the issue of liability, even though factual issues relating to apportionment of damages remained for the jury's consideration under OCGA § 51-12-33. See also *First Christ Holiness Church, Inc. v. Owens Temple First Christ Holiness Church, Inc.*, 282 Ga. 883, 885 (655 SE2d 605) (2008) ("A summary judgment is a judgment on the merits of the underlying claims or *defenses*.") (citations omitted; emphasis supplied). Compare *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 221-222 (633 SE2d 623) (2006) (ruling on the proper method of valuation in a condemnation case was not a grant of partial summary judgment because it did not reach "the merits of any element of damage;" rather, motion was more in the nature of a motion in limine); *St. Francis Hosp., Inc. v. Patton*, 228 Ga. App. 544, 545 (1) (492 SE2d 303) (1997) (ruling on a motion seeking a factual determination that the hospital had breached its by-laws was not a partial summary judgment, because it did not result in a ruling on liability

6

entitling doctor to recover on his claim asserting wrongful termination of his hospital privileges).

Accordingly, Burgundy's direct appeal of the trial court's ruling was authorized under OCGA § 9-11-56 (h),[5] and Link's motion to dismiss is denied.

2. We turn now to the merits of the issue raised in the parties' cross-motions for partial summary judgment addressing the family purpose doctrine: specifically, whether the family purpose doctrine can be used by a defendant to impute the negligence of the child onto the plaintiff-parent.

We start our analysis by setting out the principles under which a parent can be made liable for the torts of their minor children. "It is well settled in this state that parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship." (Citation omitted.) *Smith v. Brooks*, 247 Ga. App. 831, 832 (545 SE2d 135) (2001). See also *Phillips v. Dixon*, 236 Ga. 271, 272 (223 SE2d 678) (1976) ("[A] parent generally is not liable for the torts of a child[.]") (citation omitted); *Kitchens v. Harris*, 305 Ga. App. 799, 800 (701 SE2d 207) (2010) (same). Rather, OCGA § 51-2-2, a version of which has appeared in every Georgia

_____

[5] OCGA § 9-11-56 (h) provides, in pertinent part, that "[a]n order granting summary judgment on any issue or as to any party shall be subject to review by appeal."

7

code since 1863,[6] sets out the circumstances under which a parent is liable for a child's torts, providing:

> Every person shall be liable for torts committed by his wife,[7] his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.

In the context of automobiles, Georgia courts have applied the principle espoused in this statute to hold that "[w]hether or not the owner of an automobile is liable for damage caused by it which results from the negligence of the person operating it depends upon whether the person driving it was the servant of the owner and engaged upon the business of the owner at the time the negligence occurred." (Citations and punctuation omitted.) *Samples v. Shaw*, 47 Ga. App. 337, 337-38 (1) (170 SE 389) (1933) (citing Ga. Code. 1910, § 4413). Historically, therefore, "[u]nless the parent

---

[6] Georgia Code 1863 § 2904 also included the phrase "or slave," and "[t]he principle announced in the section cited has appeared in totidem verbis, with the omission of the words "or slave," in all the succeeding Codes: 1868, § 2910; 1873, § 2961; 1882, § 2961; 1895, § 3817; 1910, 4413." *Curtis v. Ashworth*, 165 Ga. 782, 782 (142 SE 111) (1928). See also OCGA § 51-2-2; Ga. Code 1933 § 105-108.

[7] Since 1928, our Supreme Court has held that "[a] husband, under our statutes which have changed the status of married women, is no longer liable for the independent torts of the wife not committed by his command or with his consent, and in which he did not in any way participate." *Curtis*, 165 Ga. at 793.

8

participated in the minor's tort, or through negligence caused or permitted the tort to occur, courts often absolved parents from liability, unless some other relationship, such as that of principal and agent, or master and servant, existed between parent and child." (Citation and punctuation omitted.) *Corley v. Lewless*, 227 Ga. 745, 747 (1) (182 SE2d 766) (1971). For example, in *Schumer v. Register*, 12 Ga. App. 743, 746-47 (78 SE 731) (1913), this Court held under a prior version of OCGA § 51-2-2 "that a parent would not be responsible for a tort of a minor child if the tort was committed when the child was engaged merely in pleasure and not in the business of the parent." See Ga. Code 1910 § 4413.

Two years later, in 1915, our Supreme Court adopted the family purpose doctrine, holding:

> If a father or mother, owning an automobile, and keeping it to be used for the comfort and pleasure of the family, should authorize a son to drive it for the comfort or pleasure of the family, this would make the owner liable for the negligence of the son operating the machine for such purpose.

*Griffin v. Russell*, 144 Ga. 275, 287 (1) (87 SE 10) (1915). The Court later explained that

9

[t]he policy behind the origin of the doctrine was the ever increasing number of automobile collisions and the frequency with which the negligent driver was found to be judgment proof. In the case of a family at least, this factor was minimized by finding liability as to the owner of the car who allowed family members to use the car for family pleasures.

(Citations omitted.) *Phillips*, 236 Ga. at 272. Therefore, the family purpose doctrine "came into being, not through statute, but by judicial construction and interpretation,"[8] to supply the requirement of agency[9] in order to impose liability on a parent for damages to a third party caused by a child.

---

[8] *Harper v. Brown*, 122 Ga. App. 316, 322 (176 SE2d 621) (1970) (Evans, J., dissenting). Although the doctrine "arose from the principles of agency," *Phillips*, 236 Ga. at 272, it has been described variously as "'a manufactured agency'" and "'an instrument of policy[,]'" *Maddox v. Queen*, 150 Ga. App. 408, 409 (257 SE2d 918) (1979) (quoting Prosser, Law of Torts 496, 497 (3d Ed.), § 72), "an extension of the principal-agent relationship[,]" *Dixon v. Phillips*, 135 Ga. App. 161, 166 (217 SE2d 331) (1975) (Stolz, J., dissenting), and "a fictitious agency to establish liability." *Finnocchio v. Lunsford*, 129 Ga. App. 694, 694 (2) (201 SE2d 1) (1973).

[9] See, e. g., *Studdard v. Turner*, 91 Ga. App. 318, 321 (85 SE2d 537) (1954) ("When it is first established, at least prima facie, that a car is a family-purpose car, then the agency of the family member driving is prima facie established . . . ." (citation and punctuation omitted); *Samples*, 47 Ga. App. at 338 (2) (The agency under the principle set out OCGA § 51-2-2 "may exist where the owner keeps an automobile as a 'family car,' for the comfort, convenience, pleasure, and use of members of his family, and he may in such a case be liable for the negligence of one of his family, who is thus considered as driving the car 'upon the business of the owner.'") (citation and punctuation omitted).

As developed over time, our courts have defined claims under the family purpose doctrine as a separate cause of action, *Safi-Rafiq v. Balasubramaniam*, 298 Ga. App. 274, 276 (679 SE2d 822) (2009), citing *Parker v. Jester*, 244 Ga. App. 494, 496 (2), n.2 (535 SE2d 814) (2000), which must be proved through a two-step process:

> First, the following four preconditions must be found present: (1) the owner of the vehicle must have given permission to a family member to drive the vehicle; (2) the vehicle's owner must have relinquished control of the vehicle to the family member; (3) the family member must be in the vehicle; and (4) the vehicle must be engaged in a family purpose. Second, and only after the above four necessary preconditions have been satisfied, the doctrine renders the defendant vicariously liable if defendant had the right to exercise such authority and control that it may be concluded that an agency relationship existed between defendant and the family member with respect to the use of the vehicle.

(Citation omitted.) *Yim v. Carr*, 349 Ga. App. 892, 895 (1) (a) (827 SE2d 685) (2019).

Turning to the issues raised in this appeal, Link has not pointed us to, nor have we found, any case in Georgia where either the family purpose doctrine or OCGA § 51-2-2 has been applied as a defense to bar an owner-passenger's claim against a third party. Although OCGA § 51-2-2 under its plain language could be read to

11

impute liability to the parent for torts of a child, without exception, our Supreme Court has consistently declined to apply such an absolute construction of the statute. As the Supreme Court has explained,

> when interpreting legal text, we do not read words in isolation, but rather in context. The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text.

(Citations and punctuation omitted.) *City of Guyton v. Barrow*, 305 Ga. 799, 805 (3) (828 SE2d 366) (2019). So we turn to the context and decision law concerning the text.

From the beginning, the Supreme Court has viewed OCGA § 51-2-2 as a codification of the common law principle that liability from a child's torts does not arise merely from the relation of parent and child, but rather is governed by the principles of master and servant or principal and agent. See *Chastain v. Johns*, 120 Ga. 977, 978-79 (48 SE 343) (1904). See also *Phillips*, 236 Ga. at 272; *Stanford v. Smith*, 173 Ga. 165 (159 SE 666) (1931). *Chastain* is the first case addressing the statute in the context of the parent/child relationship, and there, the Supreme Court explained that

12

[i]t is apparent that if the words "by his command, or in the prosecution and within the scope of his business," in the [statute], are to be applied only to the word "servant," the parent is liable for all torts of his minor child, as claimed in the plaintiff's petition; otherwise if they extend to both "child" and "servant." The punctuation of the section renders its meaning in this respect somewhat ambiguous, but when it is remembered that the section is not based on any special statutory enactment, but is merely a codification of the common law on the subject, this ambiguity is at once removed.

*Chastain*, 120 Ga. at 978 (construing Ga. Code 1895 § 3817).

Thus, given the context and decisional law that binds this Court, which makes clear that the family purpose doctrine is a common law construct to permit a plaintiff to recover from a negligent child's parent under specific circumstances, we decline to extend the family purpose doctrine to allow it to be used as a *defense* by a third party to a family member's claims. The trial court erred to the extent that it held that the family purpose doctrine could be applied as a defense to Burgundy's claims against Link.

3. Burgundy also appeals the grant of partial summary judgment to Link on the ground that the family purpose doctrine applied to the Guzman car as a matter of law for purposes of Link's counterclaim. As discussed previously, the trial court analyzed

13

the issue of the family purpose doctrine in the context of Link's counterclaim seeking to recover for his own injuries and granted summary judgment on that issue sua sponte, even though the issue had not been raised in the parties' cross-motions.

"A trial court may grant summary judgment sua sponte, but this authority is not unlimited." (Citation omitted.) *Pruette v. Phoebe Putney Mem. Hosp.*, 295 Ga. App. 335, 342 (2) (671 SE2d 844) (2008).

> In addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. Thus, we have reversed summary judgment where the parties did not argue the merits of a claim either in briefs or at a hearing.

(Citation omitted.) *Gatto v. City of Statesboro*, 353 Ga. App. 178, 187 (4) (834 SE2d 623) (2019). Accordingly, we must first consider whether the trial court could properly grant of summary judgment on the counterclaim sua sponte.

In its summary judgment order, the trial court first found that Link can assert a counterclaim based on the family purpose doctrine, but that issue was never contested below and Burgundy expressly concedes on appeal that Link can file such a counterclaim. The trial court then went beyond that finding to hold that Link had

14

established as a matter of law that the family purpose doctrine applied to the Guzman car and granted summary judgment on that basis. Because Burgundy does not assert that she was denied the opportunity to brief or argue this issue, and the parties did, in fact, brief and argue the issue below in the context of Link's affirmative defense, the trial court was entitled to consider it, and we will review it on appeal.

Based on our review of the record, we find that genuine issues of material fact remain under the family purpose doctrine, at the very least, on the issues of ownership and whether "[Paul] had the right to exercise such authority and control that it may be concluded that an agency relationship existed between [Paul] and [Tatum,]" *Yim*, 349 Ga. App. at 895 (1), and thus the trial court erred in ruling that the doctrine applied to the Guzman car as a matter of law.

First, as to who owned the car – Tatum or her parents – the evidence shows that Paul and Burgundy co-signed a loan for the purchase of the car in June 2016 and that their names appear on the car's title. Burgundy testified, however, that they gifted the car to Tatum the week of her 16th birthday that same month and that "[t]he family considered it, for all intents and purposes, to be 'Tatum's car' for her to use as she pleased." Burgundy asserts that the only reason the car was not titled in Tatum's name was because she was a minor, and Georgia law did not allow them to title the

car in a minor's name, citing OCGA §§ 13-3-20 and 39-1-1 (a). Additionally, both

Paul and Burgundy each had his or her own car that they used for their own purposes.

Our courts have previously recognized that

the Georgia Title Certificate Law provides a simple statutory method of proving ownership of vehicles, but it is not exclusive. The statute provides that the certificate of title is prima facie evidence of the facts appearing in the certificate, including the name of the owner. The statute did not change the existing case law as to the manner in which ownership of chattels including automobiles could be proven.

(Citation and punctuation omitted.) *Mimick Motor Co. v. Moore*, 248 Ga. App. 297,

298-99 (1) (a) (546 SE2d 533) (2001) (precluding summary judgment of ownership

based merely on title where defendant asserted that he was a bona fide purchaser for

value). Thus, title is not dispositive of the ownership of a motor vehicle. Id.

Moreover, in *Keith v. Carter*, 172 Ga. App. 588, 588 (323 SE2d 886) (1984),

this Court considered the issue of ownership in the context of the family purpose

doctrine in a case where a father had purchased a vehicle for his son as a gift, but

retained title in his name because the son was a minor at the time of purchase. Since

that time, the son paid for the car's insurance and registration, as well as operational,

maintenance and repair costs for the vehicle, and the father "never had a property

16

interest in the car other than its initial registration, never considered the vehicle to be his nor exercised any incidents of ownership over it." Id. at 589. Under those circumstances, this Court found that the son had been the sole owner of the car from the date of its purchase. Id.

Here, neither party has pointed us to any evidence addressing who made the loan payments or who paid for the maintenance or insurance on the car. The trial court construed the lack of such evidence in favor of Link as the "non-movant." However, the matter was presented on cross-motions for partial summary judgment on the same issue and facts, so with regard to Link's motion, which the trial court granted, the lack of such evidence should have been viewed in Burgundy's favor, and the trial court erred in construing it otherwise as to that motion. Accordingly, we find that a jury issue remains as to the ownership of the Guzman car.

A genuine issue of material fact also exists as to whether Paul retained such authority and control over the car that a principal-agency relationship arose with respect to the vehicle. Under the family purpose doctrine "[t]he principal factor is authority and control of the vehicle, and this is not necessarily determined by title to the vehicle or payment for the expenses of operation. Agency, not ownership, is the test of liability." (Citations and punctuation omitted.) *Yim*, 349 Ga. App. at 895 (1)

17

(a). Here, Burgundy testified in her deposition that Paul and she did not control Tatum's use of the car or her driving, averring that they put no limits on her use of the car and she did not need to ask permission to drive it, but could use it without informing her parents of her whereabouts. On those occasions when the parents wanted to use the car, they asked Tatum's permission to do so. On the other hand, Tatum was 16 years old at the time of the accident, and Burgundy conceded that as parents, they limited Tatum's use of the car to the tri-city limits of Marietta, Kennesaw, and Woodstock and that she had to be home by curfew, but she explained that these rules were in place before Tatum got the car and applied whether Tatum was driving the car or not. Burgundy also stated that Tatum was not allowed to use her phone while driving. Based on the conflicting evidence, we cannot say as a matter of law that Paul had the right to exercise authority and control over the car sufficient to create a principal-agent relationship. That question is for the jury.

Accordingly, we reverse the trial court's grant of partial summary judgment to Link on this ground and affirm the denial of Burgundy's motion to the extent it sought a determination as a matter of law that the family purpose doctrine did not apply to the Guzman car.

*Judgment affirmed in part and reversed in part. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*