**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 22, 2022**

# In the Court of Appeals of Georgia

A21A1720. SOWELL et al. v. SOLOMON et al.

GOBEIL, Judge.

In 2017, Brandon and Linda Sowell's (collectively, the "Defendants") minor son was involved in a bicycle collision that resulted in the death of Timothy Solomon ("Solomon"). Solomon's widow filed a personal injury suit against the Defendants, and the Defendants now appeal from the trial court's order denying their motion for summary judgment. In that order, the trial court found that questions of fact exist as to whether the Defendants are liable under the theories of negligent entrustment, negligent supervision, and negligent training and instruction. The crux of the Defendants' contention on appeal is that based on existing precedent, parents cannot be held liable as a matter of law for "furnishing a child a bicycle who then rides it unsupervised, is involved in an accident[,] and causes injury and damages to

another." Although we disagree with the breadth and scope of the Defendants' assertion, we agree that reversal is warranted under the specific facts of this case, as explained below.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In reviewing the denial of a summary judgment motion, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.

*Yim v. Carr*, 349 Ga. App. 892, 893 (1) (827 SE2d 685) (2019) (citations and punctuation omitted). So viewed, the record shows that on April 15, 2017, at approximately 4 p.m., the Defendants' then 10-year-old son, P. S., was riding a bicycle[1] in the City of Avondale Estates when he collided with the bicycle that Timothy Solomon ("Solomon") was riding. P. S. described that he had been riding his bicycle on the sidewalk on his way home along Lakeshore Drive, when he attempted to cross the roadway to meet up with his friend on the other side of the street. As P.

---

[1] P. S. had his parents' permission to ride his older brother's bicycle on the day of the incident.

S. was "[s]tanding up on the pedals" of his bicycle with his hands on the brakes, he tried to look out for oncoming traffic, but his view was obstructed by parked cars on both sides of the street. Specifically, he could not see through the tinted windows of a parked SUV to his left. After P. S. entered the roadway, he suddenly saw Solomon riding towards him. Solomon yelled "Stop," and P. S. complied. In a matter of seconds, the front wheel of Solomon's bicycle collided with the front wheel of P. S.'s bicycle, and the impact of the collision caused Solomon to veer into a parked car and fall to the ground. As a result of the accident, Solomon sustained a head injury that led to his death a few days later.

Sandra G. Solomon, individually as Solomon's wife and as Administrator of the Estate of Timothy James Solomon ("Plaintiff"), sued the Defendants,[2] alleging claims of negligent entrustment (for providing a bicycle to P. S., who was not competent to safely ride a bicycle on a public roadway), negligent supervision (for failing to supervise P. S. as he rode a bicycle on a public roadway), and negligent instruction and training (for failing to properly instruct and train P. S. on the rules of the road as it related to bicycle safely on a public roadway). The Defendants moved

---

[2] Plaintiff did not raise any claims against P. S. See *Sorrells v. Miller*, 218 Ga. App. 641, 643 (2) (462 SE2d 793) (1995) ("In Georgia, children below the age of 13 are immune from tort liability.").

for summary judgment,[3] which the trial court denied as to liability.[4] The court found in relevant part:

> A bicycle is not always a dangerous instrumentality, but it can become a dangerous instrumentality when used improperly. Whether parents have exercised ordinary care in entrusting a bicycle to a child is wholly dependent on many variables, including the particular child at issue, the particular time at issue, and the particular location at issue.

The court therefore reasoned that Plaintiff's claims stemming from the Defendants' furnishing P. S. with a bicycle to ride on a public roadway were best left to the jury, as there remained contested issues of fact as to whether the Defendants (1) exercised ordinary care to anticipate and guard against P. S.'s potential misuse of the bicycle; (2) were negligent in allowing P. S. to ride his bicycle without supervision; and (3) provided P. S. with adequate training and instruction in bicycle safety given the circumstances present in this case. The trial court issued a certificate of immediate

---

[3] The Defendants also filed a motion for sanctions, alleging that Plaintiff "spoliated evidence when she either destroyed or failed to maintain the speedometer that was affixed to her husband's bicycle at the time of his accident with P. S." The trial court denied the motion, and the Defendants do not challenge this ruling on appeal.

[4] The Defendants also sought summary judgment as to the issue of damages. The trial court granted the motion as to Plaintiff's claim for post-impact harm, but denied the motion as to the claim for future earnings. The Defendants have not raised any arguments in their brief concerning damages.

review. We granted the Defendants' application for interlocutory review, and this appeal followed.

"It is well settled in this state that parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship." *Smith v. Brooks*, 247 Ga. App. 831, 832 (545 SE2d 135) (2001) (citation and punctuation omitted). See also *Phillips v. Dixon*, 236 Ga. 271, 272 (223 SE2d 678) (1976) ("[A] parent generally is not liable for the torts of a child[.]"); *Kitchens v. Harris*, 305 Ga. App. 799, 800 (701 SE2d 207) (2010) (same). Rather, OCGA § 51-2-2, a version of which has appeared in every Georgia code since 1863, sets out the circumstances under which a parent is liable for a child's torts, providing:

> Every person shall be liable for torts committed by his wife, his child, or his servant *by his command or in the prosecution and within the scope of his business*, whether the same are committed by negligence or voluntarily.

(Emphasis supplied.) Parents' duty to control their minor children is expressed in the Restatement (Second) of Torts § 316 as follows:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from . . . so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows

5

or should know of the necessity and opportunity for exercising such control.

Historically, therefore, "unless the parent participated in the minor's tort, or through negligence caused or permitted the tort to occur, courts often absolved parents from liability, unless some other relationship, such as that of principal and agent, or master and servant, existed between parent and child." *Guzman v. Link*, 354 Ga. App. 463, 467 (2) (841 SE2d 203) (2020) (citation and punctuation omitted).

"Parents may be held directly liable, however, for their own negligence in failing to supervise or control their child with regard to conduct which poses an unreasonable risk of harming others." *Boston v. Athearn*, 329 Ga. App. 890, 893 (1) (764 SE2d 582) (2014). For example, an action has been permitted to proceed where there was some parental negligence in furnishing or permitting a child access to an instrumentality with which the child likely would injure a third party. See e.g., *Faith v. Massengill*, 104 Ga. App. 348, 354 (2) (a) (121 SE2d 657) (1961) (air rifle), overruled on other grounds by *Brady v. Lewless*, 124 Ga. App. 858, 859 (186 SE2d 310) (1971); *Herrin v. Lamar*, 106 Ga. App. 91, 93-95 (2) (126 SE2d 454) (1962) (rotary lawnmower); *Glean v. Smith*, 116 Ga. App. 111, 112-114 (3) (156 SE2d 507) (1967) (pistol); *McBerry v. Ivie*, 116 Ga. App. 808, 810-811 (159 SE2d 108) (1967)

6

(shotgun). "In cases of this sort the question is whether the facts of the case impose upon the parent a duty to anticipate injury to another through the child's use of the instrumentality." *Corley v. Lewless*, 227 Ga. 745, 748 (1) (182 SE2d 766) (1971).

1. As a starting point, the Defendants argue that the trial court erroneously distinguished Georgia precedent that precludes liability for the parental negligence claims in this action. In this regard, the Defendants point to *Calhoun v. Pair*, 197 Ga. 703 (30 SE2d 180) (1944), where the plaintiff brought an action against the defendant, alleging that plaintiff's 12-year-old son had been injured after being "r[u]n over" by a bicycle ridden by the defendant's 14-year-old son. *Calhoun v. Pair*, 71 Ga. App. 211 (30 SE2d 776) (1944). The plaintiff's complaint described:

> That the defendant furnished the bicycle to his son for the specific purpose of giving the son transportation to and from his home and school, the school being considerable distance from his home, and the son was riding the bicycle with the father's approbation and was therefore the agent and/or servant of the defendant, acting with[in] the scope of his agency and/or employment at the time of the [occurrence] complained of in this suit.

*Calhoun*, 71 Ga. App. at 211 (punctuation omitted). The plaintiff further alleged that the defendant's child was riding his bicycle on the sidewalk within the limits of the City of Atlanta in violation of a city ordinance. Id. at 212. The trial court dismissed

7

the suit on the basis "that no cause of action was set forth either at law or in equity."

Id. This Court certified the following questions to the Supreme Court of Georgia:

> 1. Is a father, who furnishes to his minor son (fourteen years of age) a bicycle for the purpose of using the same to go to and from school, liable to another in damages for injuries received by the other when such injuries are occasioned by the negligent and unlawful use of such bicycle by the minor son, and where such negligence is the proximate cause of the injury? 2. If the answer to the first question is in the affirmative, is such liability based on what is generally termed "the family purpose doctrine,"[5] or on some other principle of law?

*Calhoun*, 197 Ga. at 703 (punctuation omitted). The Justices were "unanimous in the view that the answer to the first question is, 'No.'" Id. However, "[t]he Justices [were] in disagreement as to the processes of reasoning by which [they] reach[ed] the ultimate conclusion." Id.

---

[5] In 1915, our Supreme Court adopted the family purpose doctrine, which states that a parent may be liable for the negligent actions of a child, where the child is driving a family-owned automobile for the comfort and pleasure of the family. See *Griffin v. Russell*, 144 Ga. 275, 287 (1) (87 SE 10) (1915). In *Calhoun*, the Supreme Court found it unnecessary to address the applicability of the family purpose doctrine in light of its conclusion that the parent could not be held liable for the child's bicycle accident. 197 Ga. at 703. More recently, in *Carter v. Kearse*, 142 Ga. App. 251, 251 (235 SE2d 755) (1977), our Court declined to extend the family purpose doctrine to bicycles.

Here, the trial court determined that *Calhoun* was inapplicable to this case. Specifically, the court interpreted the ruling as being limited to claims alleging vicarious liability against parents for the negligence of their children, and not applicable to direct negligence claims against parents as alleged here. Notably, however, the Supreme Court's opinion in *Calhoun* did not expressly limit its ruling to parental vicarious liability claims. See *Calhoun*, 197 Ga. at 703. And neither the trial court nor Plaintiff has cited any precedent providing such limitation. The Defendants contend that the *Calhoun* plaintiff essentially brought a claim of negligent entrustment against the father for furnishing his minor son with a bicycle, and therefore, the reasoning in *Calhoun* applies in this case to bar Plaintiff's claims. By contrast, Plaintiff argues that the *Calhoun* plaintiff raised his claim based on the minor child's negligent use of the bicycle while acting as the father's agent and/or servant, see 71 Ga. App. at 211, and thus, the *Calhoun* holding is applicable only to parental vicarious liability claims.

The Supreme Court's opinion in *Calhoun* is short and its intended scope unclear given its failure to specify the plaintiff's exact claims in the underlying action. The opinion addresses whether a parent is "liable to another in damages for injuries received by the other when such injuries are occasioned *by the negligent and*

9

*unlawful use of such bicycle by the minor son*[.]" *Calhoun*, 197 Ga. at 703 (emphasis supplied). On its face, this language suggests an allegation of vicarious liability as opposed to a claim of direct negligence against the parents, as is the case here. In any event, based on its limited language, we agree with the trial court that *Calhoun* is not dispositive of the claims in this appeal.

2. Turning to the instant case, Plaintiff's parental negligence claims against the Defendants stem from their furnishing a bicycle to P. S. and allowing him to ride unsupervised in his local neighborhood. We first consider the standard of care applicable to each of these claims.

(a) *Negligent Entrustment*

Subsequent to *Calhoun*, we have explained that

[w]here injury is caused by an instrumentality made accessible to the child by the parent, which if used properly is reasonably safe but which becomes a dangerous instrumentality when not properly handled, the question becomes one of ordinary negligence. Whether or not the parent exercised ordinary care to anticipate and guard against such misuse is thus frequently a jury question as in other negligence cases. . . . Although recovery is permitted where through parental negligence a child is permitted access to an instrumentality which, if not properly used, is foreseeably likely to cause injury to a third person, this does not make the parent liable for an injury negligently inflicted by a child

10

*where there is no dangerous proclivity known to the former and no reason to anticipate the injury which in fact occurred.*

*Hill v. Morrison*, 160 Ga. App. 151, 151-153 (286 SE2d 467) (1981) (emphasis supplied) (in negligence action brought against parents of nine-year-old boy who allowed his companion to ride his motorized go-cart which resulted in death of companion in collision with automobile, material issue of fact existed as to whether parents' instructions to their son not to let a third person use the go-cart without parental permission was sufficient to relieve parents from responsibility, precluding summary judgment). See also, *Davis v. Gavalas*, 37 Ga. App. 242, 242 (139 SE 577) (1927) (holding that plaintiff adequately pleaded a cause of action against the parents for negligence because the parents "knowingly permit[ed]" their child, a five-year-old, to ride a velocipede[6] on a public sidewalk at night[7]); *Herrin*, 106 Ga.

---

[6] A "velocipede" is "a lightweight wheeled vehicle propelled by the rider," similar to a bicycle. See Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/velocipede (last visited Jan. 24, 2022).

[7] It remains unclear whether the negligence claim in *Davis* was based on, for instance, the velocipede's being a dangerous instrumentality, the child's previous use of the velocipede (in a way that put the parents on notice that the child could harm someone else if the child rode the velocipede), the child's age or maturity, or the operating conditions.

11

App. at 92-95 (1)-(2) (finding cause of action against mother for furnishing an inherently dangerous instrumentality (a lawnmower) to her ten-year-old child).

Here, it is undisputed that the Defendants gave P. S. permission to ride a bicycle on the date of the incident. As a result, the key inquiry is whether the Defendants' act in allowing P. S. to ride his bicycle in his local neighborhood without their direct supervision, was "foreseeably likely to cause injury to a third person[.]" *Hill*, 160 Ga. App. at 151-152.[8]

   (b) *Negligent Supervision*

---

[8] This standard contrasts with that applicable to instances in which a parent did not furnish or expressly permit a child access to a potentially dangerous instrument, but the child accessed it anyway. In such cases, a plaintiff has to show a heightened standard of knowledge, namely, "whether the parent knew of the child's proclivity or propensity for the specific dangerous activity." *Kitchens*, 305 Ga. App. at 800 (reversing trial court's denial of summary judgment on negligent entrustment and negligent supervision claims because there was no evidence that the parents knew or should have known that their child had a proclivity or propensity to use the ATV, or allow others to use it, without their permission and presence) (citation and punctuation omitted). See also *Dent v. Smith*, 172 Ga. App. 90, 92-93 (322 SE2d 100) (1984) (parents entitled to summary judgment when they did not furnish or make available a BB gun, and there was no evidence that the child had any proclivity or propensity for playing with it); *Muse v. Ozment*, 152 Ga. App. 896, 898-899 (264 SE2d 328) (1980) (the father was entitled to summary judgment where the evidence showed he did not know of any proclivity of the son for taking a golf club out of an unlocked storage building and swinging it in the presence of others).

12

Where liability is based on parents' alleged failure to supervise or control their child, a key question is the foreseeability of the harm suffered by the plaintiff, that is, whether the parents had knowledge of facts from which they should have reasonably anticipated that harm to another would result unless they controlled their child's conduct. The true test of parental negligence vel non is whether in the exercise of ordinary care he should have anticipated that harm would result from the unsupervised activities of the child and whether, if so, he exercised the proper degree of care to guard against this result. The level of care that is due necessarily depends on the circumstances, which may involve an inherently dangerous instrumentality, a commonly-available object that only becomes dangerous if it is intentionally used to cause harm or is handled in an improper and dangerous manner, or no instrumentality at all. Whether parents failed to use ordinary care in supervising or controlling their child is generally a question for the jury when the circumstances support an inference that the parents were on notice that, absent their intervention, injury was likely to result from the child's conduct.

*Boston*, 329 Ga. App. at 893-894 (1) (citations, punctuation, and footnotes omitted).

(c) *Negligent Instruction and Training*

"To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury." *Advanced Disposal Srvs. Atlanta, LLC v. Marczak*, 359 Ga. App. 316, 319 (2) (857 SE2d 494) (2021); see also

13

*Tyner v. Matta-Troncoso*, 305 Ga. 480, 488 (3) (826 SE2d 100) (2019) ("[W]ithout reasonable foreseeability — a hallmark of proximate cause — there exists no genuine issue of material fact as to . . . causation.").

3. Examining the issues before us in light of the attendant facts and the principles of law discussed in Division 2, we conclude that the trial court erred in denying the Defendants' motion for summary judgment on Plaintiff's parental negligence claims.

The relevant record is undisputed and reflects that P. S.'s parents taught him how to ride a bicycle when he was four years old, approximately six years prior to the incident. He first started riding a bicycle unaccompanied when he was eight years old. Apart from the falls one experiences when learning to ride a bicycle, P. S. had never been involved in an accident. The Defendants explained that they were confident of P. S.'s ability to ride a bicycle and had taught him how to ride safely on the road, including being aware of his surroundings, following traffic signs, and checking for traffic by looking in both directions before crossing a street. P. S.'s parents were not with him at the time of the incident. But, they had instructed P. S. to cross at a crosswalk when available, and if a crosswalk was not an option, then to check for traffic both ways and cross the street when it was clear of traffic. Although the

Defendants previously had seen P. S. cross the street in the middle of the road, rather than at an intersection or a marked crosswalk, the record is silent as to what, if anything, resulted from this action, and how this should have given the Defendants "reason to anticipate the injury which in fact occurred" in this case.[9] *Hill*, 160 Ga. App. at 152.

There also is no evidence in the record that the bicycle had any mechanical defects, that it was used improperly, or that it was unsuitable for a boy of P. S.'s age, height, or weight. Although P. S. was riding his brother's bicycle at the time of the accident, which was bigger than his own bicycle, he had ridden his brother's bicycle more than three or four times in the past without incident. Additionally, there is no evidence that P. S. was physically impaired or that he lacked the basic skills of an average boy his age. There also is no indication that P. S. was riding the bicycle in an area inappropriate for that use or that he disobeyed his parents' instructions on how

---

[9] The closest crosswalk to the scene of the accident on Lakeshore Drive was approximately half a mile away. The parties dispute the legality of P. S.'s actions of riding on a sidewalk and crossing from a place other than an intersection or crosswalk. Plaintiff further urges that we disregard the Defendants' contentions on these issues as they were not raised properly in the trial court. However, we do not reach these questions. Our analysis hinges not on what P. S. did or did not do and the legality of the same, but rather on the adequacy of what his parents did or did not do to anticipate and guard against the risks of P. S.'s actions by furnishing him with a bicycle and allowing him to ride unsupervised.

to ride safely.[10] His parents had advised him to ride on the sidewalk if available, rather than the street, to avoid being hit by a car. If people were walking on the sidewalk, P. S. would get off the sidewalk and get in the street to go around them, and then get back on the sidewalk. The Defendants had only moved to the City of Avondale Estates a few weeks before the accident, and the Defendants could not recall whether they had instructed P. S. on how to ride in an area where there were a lot of parked cars, or to look out for other bicyclists on the road. Nevertheless, the Defendants were confident in P. S.'s bike-riding abilities and trusted him to ride a bicycle in a safe manner.

In its order denying the Defendants' motion for summary judgment on the parental negligence claims, the trial court found that whether parents have exercised ordinary care in entrusting a bicycle to a child to ride unsupervised is wholly dependent on many variables, including "the particular child at issue, the particular time at issue, and the particular place at issue[.]" However, as discussed above,

---

[10] Even assuming, without deciding, that P. S. disobeyed his parents in failing to confirm no oncoming traffic (as his view of oncoming traffic was obstructed as he looked over the parked cars and entered the road), such action would go to his negligence, as opposed to any negligence on the part of the Defendants.

> [w]here injury is caused by an instrumentality made accessible to the child by the parent, . . . the true test of parental negligence vel non is whether in the exercise of ordinary care he should have anticipated that harm would result from the unsupervised activities of the child and whether, if so, he exercised the proper degree of care to guard against this result.

*Hill*, 160 Ga. App. at 151. Here, where the record evidence shows that the Defendants exercised care in teaching P. S. to ride a bicycle safely, and P. S. had done so — supervised and unsupervised — for six years without incident, Plaintiff failed to show that the Defendants did not meet the standard of care in entrusting P. S. with the bicycle.

Similarly, with respect to Plaintiff's claims concerning the Defendants' alleged failure to supervise or control P. S., or properly train him on riding a bicycle on a public roadway, "a key question is the foreseeability of the harm suffered by the plaintiff, that is, whether the parents had knowledge of facts from which they should have reasonably anticipated that harm to another would result unless they controlled their child's conduct." *Boston*, 329 Ga. App. at 893 (1). See also *Doe I v. Young Women's Christian Assn. of Greater Atlanta, Inc.*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013) ("In order to defeat summary judgment on a claim for negligent

training and supervision, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue.") (citation and punctuation omitted). Based on the record before us, there is no indication that the Defendants had any reason to anticipate that P. S. would be involved in a bicycle accident such as occurred here, and Plaintiff failed to present evidence sufficient to raise a jury question on this issue.[11]

There is no true winner in this tragic case. The law does not insulate parents from direct liability for all negligent acts of their children. Nor does it subject parents to liability every time a child commits a negligent act: there are legal limits on parental liability rooted in the concepts of reasonableness and foreseeability — no one is able to anticipate and guard against every possible circumstance children may encounter or action they may take. As the Defendants highlight, "purchasing a bicycle for a child does not automatically subject parents to a jury trial if their child is in an accident while riding in their own neighborhood." "Riding a bicycle has become, practically speaking, a natural stage of every child's development. It is very common

---

[11] Plaintiff asserts that the Defendants should not be allowed to benefit from the "one free bite rule" simply because P. S. had never been involved in an accident prior to the instant incident while riding his bicycle. We find this statement a broad simplification of our ruling. Simply put, as explained above, based on the specific facts of this case, the Defendants had no reason to anticipate or guard against the accident that occurred here.

to see very young children . . . riding unassisted. Although a child's bicycle is a machine, it is not complex." *Santalucia v. County of Broome*, 205 AD2d 969, 970-971 (613 NYS2d 774) (1994). Our ruling is in no way intended to serve as a blanket rule that parents are automatically immune from damages for direct negligence claims if a child gets into an accident while riding a bike unsupervised. Here, there is no evidence that the Defendants were aware that P. S. might not be able to control his bicycle while riding on a public roadway without placing third parties at unreasonable risk. Under the specific circumstances herein, we hold that the Defendants are not liable as a matter of law for the instant incident "where there [was] no dangerous proclivity [by P. S.] known to [the Defendants] and no reason to anticipate the injury which in fact occurred." *Hill*, 160 Ga. App. at 152.

Accordingly, we reverse the trial court's denial of the Defendants' motion for summary judgment against Plaintiff's claims for negligent entrustment, negligent supervision, and negligent training and instruction.

*Judgment reversed. Barnes, P. J., and Markle, J., concur.*